CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougall, trustee, Plaintiffs,

v.

DUSSAULT MOVING, INC., an Ohio corporation, Defendant.

No. 93 C 3746.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 6, 1995.

---

Albert M. Madden, Robert A. Coco and Patrick J. Connor, Central States Law Dept., Rosemont, IL, for plaintiffs.

Walter Jones, Jr. and Jorge V. Cazares, Pugh, Jones & Johnson, P.C., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, and its trustee, Howard McDougall (collectively "the Fund"), have brought this action against defendant, Dussault Moving, Inc. ("Dussault"), under the Employee Retirement Income Security Act of 1974 ("ERISA") for employer contributions allegedly owed to the Fund. Before this Court is plaintiffs' motion for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons stated herein, plaintiffs' motion is granted in part and denied in part.

### Facts

The Fund is a multi-employer trust fund which receives contributions pursuant to collective bargaining agreements reached between various employers and local affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT"). Dussault is an Ohio corporation engaged in the moving and storage business. On June 3, 1988, Dussault entered into a collective bargaining agreement with Local Union Number 392 of the IBT ("Local 392"). Dussault and Local 392 also entered into a participation agreement, which required Dussault to remit contributions to the Fund but allowed Dussault to terminate this obligation after giving the

Fund written notice that its legal obligation to make contributions had ended. Effective November 1, 1988, Local 392 merged into Local Union Number 293 of the IBT ("Local 293").

The Fund billed Dussault for contributions on behalf of covered employees from June, 1988 through December, 1992. Dussault paid the corresponding monthly contributions through November, 1992. Each of the bills contained a certification clause, in which Dussault reaffirmed its obligation to make contributions required by the collective bargaining agreement. On March 23, 1993, Dussault informed the Fund that the only employee on whose behalf it had been paying contributions had left covered employment on December 27, 1992. As a consequence, the Fund's monthly billing ceased. However, in late 1993 and 1994, the Fund audited Dussault's records for the period of January 1, 1989 through August 23, 1993. The audit revealed that Dussault had failed to accurately report employee work history and pay all contributions owed to the Fund. On June 22, 1993, the Fund brought this action against Dussault seeking to recover employer contributions allegedly owed. On November 3, 1994, the case was reassigned to this Court. The Fund now moves for summary judgment pursuant to FED.R.CIV.P. 56.

## Analysis

### A. *Liability*

The Court must first determine whether there is a genuine issue of material fact as to the precise date upon which Dussault's duty to contribute to the Fund expired. With respect to duration, the collective bargaining agreement provides that it

> shall go into effect on June 3, 1988 and remain in full force and effect until June 2, 1991 and thereafter from year to year unless notice to terminate is given by either party, at least sixty (60) days prior to its expiration.

Collective Bargaining Agreement, Article XXVII, at p. 17. The parties disagree as to when the collective bargaining agreement effectively terminated. The Fund argues that because it did not receive notice of termination until December, 1992, the notice be-

came effective on June 2, 1993, since the agreement continued from year to year after June 1, 1992. Dussault insists that the agreement expired on June 2, 1991 because Local 293 failed to ask Dussault to be a signatory to a successor collective bargaining agreement after the "demise" of Local 392. Dussault argues that this was "more than sufficient notice that Local 293 no longer wanted a collective bargaining relationship with Dussault." As the following discussion illustrates, the Court need not resolve this question to ascertain the date upon which Dussault's duty to contribute terminated.

■ Dussault and Local 392 in 1980 entered into a participation agreement which expressly required Dussault to remit contributions to the Fund. This agreement created a written duty to contribute which endured even if the collective bargaining agreement terminated. *See Central States Pension Fund v. Behnke, Inc.,* 883 F.2d 454, 461 (6th Cir.1989). The Fund is a third-party beneficiary of the participation agreement and therefore has standing to bring an action to recover delinquent contributions thereunder. *Central States, Southeast and Southwest Areas Pension Fund v. RD Motor Express, Inc.,* No. 85 C 7740, 1988 WL 93936, at *3 (N.D.Ill. Sept. 2, 1988) (citing *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769 (9th Cir.1986) and J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 17–8, at 623–24 (2nd ed.1977)).

■ With respect to duration, the participation agreement provides that it

> shall continue in full force and effect until such time as the Employer notifies the Fund(s) by certified mail (with a copy to the Local Union) that the Employer is no longer under a legal duty to make contributions to the Fund(s). The Employer shall set forth in the required written notice to the Fund(s) the specific basis upon which the Employer is relying in terminating its obligation to make contributions to the Fund(s). The Employer expressly agrees and hereby acknowledges by the signing of this Agreement that its obligation to make contributions to the

Fund(s) shall continue until the above-mentioned written notice is received by the Fund(s) and the Trustees acknowledge the Employer's termination in writing.

Participation Agreement, ¶ 7. The language of this provision is clear: Dussault can terminate its obligation to make contributions to the Fund when it ceases to be under such a duty, so long as Dussault gives the Fund written notice in which it states the basis upon which it relies in terminating its obligation. Dussault does not contest the fact that it failed to provide the required written notice to the Fund until August 23, 1993.

The Court finds that there is no genuine issue of material fact as to liability. Dussault had a duty to continue remitting contributions to the Fund pursuant to the terms of the collective bargaining agreement until August 23, 1993, the date upon which Dussault gave the Fund the written notice required under the participation agreement. *See Central States, Southeast and Southwest Areas Pension Fund v. RD Motor Express, Inc.,* supra, No. 85 C 7740, 1988 WL 93936, at *3–4. Accordingly, Dussault owes the Fund contributions for covered employees through August 23, 1993.

### B. *Damages*

The Court must next determine if there is a genuine issue of material fact as to the amount of contributions owed in light of the foregoing finding. The collective bargaining agreement required Dussault to contribute to the Fund on

> each regular employee covered by [the] Agreement who has been paid for at least eight (8) or more straight time hours in that work week ...

Collective Bargaining Agreement, Art. XV. Employees covered under the collective bargaining agreement include drivers, helpers, and packers; salespersons, however, are not covered. Collective Bargaining Agreement, Appendix A.

■ The Fund seeks contributions from several employees who allegedly performed covered work during the audit period. Dussault claims that one of the employees on whose behalf the Fund seeks contributions, Denis DeVito ("Mr. DeVito"), did not per-

form covered work for each week included in the Fund's billing. In support of its position, Dussault cites the deposition testimony of Mr. DeVito, who stated that there were weeks during the audit period in which he performed only sales work. The Fund retorts that Mr. DeVito testified merely that there "might" be weeks in which he performed only not covered sales work. Because Mr. DeVito's deposition is not sufficiently detailed and clear to allow the Fund to prevail, the present record does not allow an award of summary judgment to the Fund on the issue of Mr. DeVito's contributions.

There is, however, no dispute as to the amount owed apart from the question as to Mr. DeVito. Summary judgment will be entered on the issue of damages as to all other employees.

### C. *Conclusion*

For the foregoing reasons, the Fund's motion for summary judgment is granted in part and denied in part. Trial with respect to the DeVito contributions is set for February 7, 1995 at 10:00 a.m.

**ENTER ORDER.**