**GCIU EMPLOYER RETIREMENT FUND, Plaintiff–Appellee,**

v.

**CHICAGO TRIBUNE COMPANY, Defendant–Appellant.**

No. 95–1065.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1995.

Decided Sept. 25, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 28, 1995.

Charles Orlove, David S. Allen (argued), Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for GCIU Employer Retirement Fund.

R. Clay Bennett, Keck, Mahin & Cate, Chicago, IL, Alan L. Marx (argued), Patrick M. Thomas, King & Ballow, Nashville, TN, for Chicago Tribune Company.

Before FLAUM and MANION, Circuit Judges, and SHARP, District Judge.*

MANION, Circuit Judge.

The GCIU Employer Retirement Fund ("Fund") sued the Chicago Tribune, Inc.

* Hon. Allen Sharp, of the Northern District of Indiana, sitting by designation.

("Tribune") pursuant to section 502(a)(3) of ERISA seeking an audit of the Tribune's payroll and records, and seeking collection of any delinquent pension contributions that an audit might reveal. Following a complicated procedural history, which included two prior appeals to this court, the district court granted the Fund summary judgment and denied the Tribune summary judgment, holding the Tribune was liable for delinquent pension contributions. The Tribune appeals. We reverse.

## I. Background

Since the earlier 1920's, the Tribune has entered into Collective Bargaining Agreements ("CBAs") with its employees. In addition to these CBAs, on January 17, 1979 the Tribune entered into a Pension Subscription Agreement with its employees' union, the Chicago Web Printing Pressmen's Union ("Union"). The terms of the 1979 Pension Subscription Agreement required the Tribune to "contribute monthly to the IP & GCU–Employer Retirement Fund the sum of $2.70 per straight-time shift worked for Journeymen and $1.89 per straight-time shift worked for Apprentices and Junior Pressmen for each employee in the collective bargaining unit represented by the Union."

A little over a year later, on February 29, 1980, the Tribune and the Union entered into a new CBA ("1980 CBA"). The 1980 CBA addressed numerous employment issues, including the Tribune's duty to contribute to the employees' pension fund ("Fund"). Specifically, Section 20 of the 1980 CBA required the Tribune to make pension contributions to the Fund at the same level as that set forth in the Subscription Agreement, namely $2.70 per straight-time shift worked for Journeymen and $1.89 per straight-time shift worked for Apprentices and Junior Pressmen. Section 20 of the 1980 CBA also defined the term "straight-time," which was left undefined by the 1979 Subscription Agreement. Additionally, Section 22A of the 1980 CBA established a Benefits Committee which was responsible for determining appropriate increases in the pension contribution rates. The 1979 Subscription Agreement had not provided for increases in the pension contri-

bution rates. The 1980 CBA also contained an integration clause which provided:

SECTION 46. It is mutually agreed that this contract, the Job Security Lists, the letter from the Association to the Union dated February 29, 1980, and the Supplementary Agreement between the parties dated February 29, 1980 shall constitute the entire agreement between the parties.

Following the execution of the 1980 CBA, the Tribune made contributions to the Fund at the initial rates established by the 1980 CBA of $2.70 and $1.89. On April 3, 1980 and April 3, 1981, pursuant to section 22A of the 1980 CBA, the Benefits Committee raised the contribution rates, the last increase setting monthly pension contributions rates at $6.00 per straight-time shift for Journeymen and $4.20 per straight-time shift for Apprentices and Junior Pressmen. The Tribune then contributed to the Pension Fund at these higher rates established pursuant to section 22A.

On April 2, 1985, the 1980 CBA expired. At that time the Tribune and the Union had not yet entered into a new collective bargaining agreement. The Tribune nonetheless continued to make pension contributions to the Fund during contract negotiations. The parties, however, were unable to negotiate a new contract and the deadlock eventually ended in a strike on July 18, 1985. Approximately 100 employees represented by the Union continued to work for the Tribune during the strike and replacement workers filled the remaining vacancies. The Tribune continued to make pension contributions to the Fund on behalf of the non-striking workers. During this time, however, the Union came to believe that the Tribune's contributions were insufficient to cover its obligations. Accordingly, the Fund requested an audit of the Tribune's books and records to ensure that after July 18, 1985 the Tribune had in fact made the appropriate pension contributions for each union pressman and each replacement worker. The Tribune refused the Fund's request, prompting the Fund's trustees to file suit under ERISA to compel an audit and to collect any delinquent pension contributions. The Tribune later submitted to an audit. This audit revealed

deficiencies in the Tribune's pension contributions beginning on the strike date.

Based on the results of the audit, the Fund moved for summary judgment claiming that the Tribune was delinquent in making pension contributions. In its motion, the Fund argued that even after the expiration of the 1980 CBA, the Tribune was required to make pension contributions under the 1979 Subscription Agreement. The Fund sought to recover contributions from the Tribune from July 18, 1985 to January 18, 1989 under the 1979 Subscription Agreement.[1] The Tribune also moved for summary judgment, arguing that it was not required to make pension contributions following the expiration of the 1980 CBA.

After two appeals,[2] the district court finally reached the merits of the Fund's litigation. The district court then granted the Fund summary judgment and denied the Tribune summary judgment, holding that the Tribune was responsible for making pension contributions to the Fund under the terms of the 1979 Subscription Agreement. The parties stipulated to the amount of the delinquency while reserving the right to appeal, making the judgment final. *INB Banking Co. v. Iron Peddlers, Inc.*, 993 F.2d 1291, 1292 (7th Cir.1993). The Tribune now appeals.

## II. Analysis

■■■ As a preliminary matter, we note that the Fund argues that this court should summarily affirm the district court's decision because the Tribune violated Circuit Rule 30. Circuit Rule 30 requires an appellant to include "the judgment or order under review" in the appendix to its opening brief. The Tribune in this case included the district court's opinion granting summary judgment to the Fund, but inadvertently failed to include the one-page order wherein the district court entered final judgment based on the

parties' stipulation as to damages. The Fund claims that the Tribune's failure to include this judgment should warrant summary affirmance. As we stated in *Sparrow v. Yellow Cab Co.*, 273 F.2d 1, 4 (7th Cir. 1959), however, in most instances, because of the importance of questions raised on appeal, the court will overlook alleged inadequacies in an appellant's appendix and consider the merits of the appeal. *See also United States v. Jordan*, 890 F.2d 968, 972 n. 7 (7th Cir. 1989) (reviewing case notwithstanding failure to comply with Rule 30). Given the procedural complexity of this case, the inadvertent exclusion of this order is minor indeed. And in light of the Tribune's response in its reply brief (an attestation to the inadvertency of the omission, an apology, and the inclusion of the judgment) this court will excuse this deficiency and proceed to the merits.

■■■ At issue here is whether the Tribune was required to pay pension benefits to the Fund under the 1979 Subscription Agreement, even though the duty to make such contributions under the 1980 CBA had expired. The district court, on cross-motions for summary judgment, held that it was. We review the grant or denial of summary judgment de novo. *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564 (7th Cir.1995). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.*

■■■ In this case, there is no dispute over the material facts and the issue presented is solely one of contract interpretation—a question of law. *Id.* at 564–65. Resolution at the summary judgment stage is therefore appropriate. *Id.* ("Summary judgment is particularly appropriate in cases involving the interpretation of contracts."). In addition, we note that this case was brought pursuant to ERISA. Federal common law

---

1. It is undisputed that the Tribune's obligation to contribute to the pension fund ended no later than January 18, 1989.

2. On the original cross-motions for summary judgment, the district court entered a minute order stating: "It is ordered and adjudged that judgment is entered in favor of the plaintiff and against the defendant." The Tribune attempted

to appeal this decision, but this court dismissed the appeal for lack of appellate jurisdiction, finding that the district court's order was not final. 888 F.2d 129 (7th Cir.1989) (table). In May of 1992, the district court dismissed the case with prejudice for want of prosecution. This court reversed and remanded for further proceedings. 8 F.3d 1195, 1201–02 (7th Cir.1993).

principles therefore govern. *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 307 (7th Cir.1992) (federal common law rules of contract interpretation apply in ERISA action). These principles require us to interpret the terms of a contract " 'in an ordinary and popular sense as would a [person] of average intelligence and experience.' " *Phillips*, 978 F.2d at 308 (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990)). Extrinsic evidence should not be used where the contract is unambiguous. *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir.1993).

■ Applying these principles to the case at hand, we conclude that the district court erred in holding that the Tribune was required to contribute to the Fund under the 1979 Subscription Agreement. The plain and unambiguous language of the 1980 CBA provided that: "It is mutually agreed that this contract, the Job Security Lists, the letter from the Association to the Union dated February 29, 1980, and the Supplementary Agreement between the parties dated February 29, 1980 shall constitute the entire agreement between the parties." The 1979 Subscription Agreement was not one of the listed agreements. Accordingly, by operation of the above integration clause, the Tribune's obligations under the 1979 Subscription Agreement were superseded by the 1980 CBA. *See Murphy*, 61 F.3d at 568 (holding that "exit agreements" could not create contractual obligation since these agreements did not come within the CBA's integration clause); *Bidlack*, 993 F.2d at 608 (parol evidence rule enforces integration clauses by barring evidence of side agreements where contract is unambiguous). Cf., *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 400 (3d Cir.1992) (absence of integration clause in a formal plan and distribution of informal documents may lead the court to find that an informal plan existed in addition to the formal plan).

The Fund nonetheless argues that the 1979 Subscription Agreement continued to exist following the expiration of the 1980 CBA. In support of its position, the Fund cites *Central States v. Dussault Moving, Inc.*, 871 F.Supp. 1046 (N.D.Ill.1995), and numerous other cases for the proposition that it is possible for a contribution agreement to extend beyond the expiration of a CBA, and that following the expiration of the CBA the employer must still contribute to the pension fund pursuant to the contribution agreement.

The Fund is correct that *Dussault Moving* and other cases have held that an obligation to make pension contributions pursuant to a contribution agreement can extend past the termination of a CBA. But none of these cases involved a CBA that was entered into after the contribution agreement, one that modified the pension contributions and, by its terms, that superseded all prior agreements. We conclude that since the CBA is a later contract which specifically terminated the earlier contribution agreement, there can be no additional duty to contribute pursuant to that earlier contribution agreement.

The Fund also argues that the 1979 Subscription Agreement was not superseded by the 1980 CBA because each contract was independent of the other, was between separate parties, was based on separate consideration and was related to an entirely different subject matter. In support of its position, the Fund cites contract treatises and Illinois common law which provide:

> The fact that an agreement is completely integrated does not, of course, affect an attempt to show an entirely separate and distinct agreement between the same parties. This truism forms the basis for the "collateral agreement" rule. Under this rule even the finding of a completely integrated agreement does not preclude a showing of a "collateral agreement," as long as it does not contradict the main agreement.

E. Farnsworth, *Contracts* § 7.3 at 207 (1990). *See also Restatement (Second) of Contracts* § 216 at 138 Comment c (1981) ("A separate contract, not covered by the integrated agreement, is not superseded."); *Hartbarger v. SCA Services, Inc.*, 200 Ill.App.3d 1000, 146 Ill.Dec. 633, 638–639, 558 N.E.2d 596, 601–602 (1990) (holding that an independent contract pertaining to a different subject matter is not barred by the parol evidence

rule, even where the parties' subsequent contract contains an integration clause).

▮ As noted above, in resolving this ERISA suit we must follow federal common law principles. Nonetheless, the above principles are well established and we conclude that federal common law principles likewise hold that an entirely separate and distinct contract is not superseded by a later contract, even one which contains an integration clause. *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir.1992) (holding that in fashioning federal common law rules to govern ERISA suits, "it is proper to turn to state law creating such rules....") (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275 (7th Cir.1990)).

Applying these principles to the case at hand, however, does not change the results because contrary to the Fund's position, the 1979 Subscription Agreement and the 1980 CBA involved the same parties, the same subject matter, and were based on the same consideration. First, as to the parties: The 1979 Subscription Agreement was entered into between the Union and the Tribune. The 1980 CBA was entered into between the Union and the Chicago Newspaper Publishers' Association. While the Chicago Newspaper Publishers' Association was the party named in the 1980 CBA, the 1980 CBA also stated that the Chicago Newspaper Publishers' Association was acting on behalf of the Chicago Tribune. Thus the parties to both contracts were the same. Both contracts also involved the same subject matter, that is, the Tribune's obligation under the pension plan. The Fund argues that the subject matter of the contracts differed because the 1979 Subscription Agreement incorporated a Trust Agreement which set forth the obligations of the Tribune to the Fund, while the 1980 CBA did not incorporate the Trust Agreement. This goes to the terms of the contract, however, and not the subject matter

of the contract. Both involved the same subject—the pension plan—but the terms of the contract differed. The 1979 Subscription Agreement provided that pension contributions would be made at the fixed rate of $2.70 per straight-time shift worked for Journeymen and $1.89 per straight-time shift worked for Apprentices and Junior Pressmen, where the 1980 CBA provided for initial contributions at the same rates, but with increases made pursuant to committee recommendations. The 1980 CBA defined the term "straight-time," where the 1979 Subscription Agreement left that term undefined. And as stated, the 1979 Subscription Agreement provided that the pension plan would be governed pursuant to a Trust Agreement, but the 1980 CBA did not incorporate the Trust Agreement, leaving the governance of the Fund to ERISA principles. All of these differences are differences in terms, however, and not the subject matter; the subject matter is the same—the Tribune's pension obligations.

Finally, and most clearly evidencing that the contracts were not independent and distinct, is the fact that the consideration provided by the Union for both contracts was identical: the employees' services. *See, e.g., Murphy*, 61 F.3d at 567. In both contracts the Union's members agreed to perform their employment duties in exchange for certain benefits. While the 1980 CBA provided the employees with potentially larger pension contributions—which in fact came to pass— the Union's promised consideration remained the same. Because the parties, the subject matter and the consideration of the 1979 Subscription Agreement and the 1980 CBA were identical, and especially because the latter contract contained an integration clause, we conclude that the 1980 CBA superseded the 1979 Subscription Agreement.[3] *Decca Records, Inc. v. Republic Recording Co.*, 235 F.2d 360, 363 (6th Cir.1956) ("A second contract of a later date than an earli-

---

**3.** The Fund also argues that the 1980 CBA could not have superseded the 1979 Subscription Agreement because the 1979 Subscription Agreement provided that it could be terminated only upon the terminating party giving 60 days notice. The Fund, however, ignores the next sentence of the 1979 Subscription Agreement which provides

that the both parties could modify the Agreement. That is exactly what happened here when the parties entered into the 1980 CBA and executed the integration clause providing that the 1980 CBA was the entire agreement between the parties, thereby superseding all prior obligations.

er contract containing the same subject matter, but containing terms inconsistent with the former contract, will supersede the former contract even though there is no express agreement that the new contract shall have that effect."). The Tribune, therefore, had no obligation to contribute to the Fund after the expiration of the 1980 CBA, and it was entitled to summary judgment.

### III. Conclusion

The 1980 CBA between the Union and the Tribune contained an integration clause which provided in clear and unambiguous terms that the 1980 CBA constituted the entire agreement between the parties. The 1980 CBA thereby superseded the 1979 Subscription Agreement. The Tribune, therefore, had no obligation to make pension contributions to the Fund following the expiration of the 1980 CBA. For these and the foregoing reasons the district court's grant of summary judgment to the Fund is reversed and remanded with instructions for the district court to enter summary judgment in favor of the Tribune.