Thomas D. WHITE, Plaintiff,

v.

E & F DISTRIBUTING COMPANY EM-
PLOYEE'S PENSION PLAN, SPRING-
FIELD MARINE BANK, n/k/a Bank
One as trustee, E & F Distributing Com-
pany as Plan Administrator and Em-
ployer, Defendants.

No. 94–3129.

United States District Court,
C.D. Illinois,
Springfield Division.

April 17, 1996.

Daniel E. Kepner, Springfield, IL, for plaintiff.

Scott D. Spooner, Stanley L. Morris, John M. Myers, Stephen A. Tagge, Springfield, IL, for defendants.

*OPINION*

RICHARD MILLS, District Judge.

Pension Plan.

Was Plaintiff covered?

No.

Summary judgment for Defendants.

## I.  BACKGROUND

A.  *Facts*

Thomas D. White is an 81 year old former employee of E & F Distributing Company (E & F) and worked for E & F from 1949 through December 31, 1979.  For the first three to five years he worked for E & F, White drove a truck and earned a regular salary.  At some point between 1952 and 1955, he became a commissioned liquor salesman.  In that capacity, he received no regular salary, was paid a straight 3 or 3.2% commission, and paid all of his own expenses.  This compensation arrangement continued until White retired from E & F in 1979.

On September 28, 1968, E & F adopted a pension plan, the E & F Distributing Company Employees' Pension Plan (the Plan).  The 1968 version of the Plan provided:

> Each present salaried employee of the Company and each salaried employee hired after the effective date of this agreement whose customary employment is for more than twenty hours a week and five months a year will be eligible to become a Participant under this Plan as of the Anniversary Date on which he first meets all of the following requirements:
>
> (a) he must be actively at work.
>
> (b) he must be at least age 25, but not more than age 60 as of the First Anniversary Date, or age 55 as of any subsequent Anniversary Date.
>
> (c) He must have been continuously employed by the company for 3 years.
>
> (d) He must file with the Trustee within 20 days after he receives the necessary form, written application for participation in this Plan in which application he must agree to abide by the provisions of this plan and comply in good faith with the requirements of the Insurer.

The 1968 version of the Plan computed pension payments based on each participant's "annual compensation." The Plan defined annual compensation as: "The amount paid as the fixed salary or wage of a Participant immediately prior to the latest Anniversary Date of the Plan, excluding commissions, bonuses, overtime, premiums, and other non-recurring compensation."

Effective September 28, 1976, E & F replaced the 1968 version of the Plan. The new Plan specifically excluded commissioned salesmen from participation.

Despite language in the Plan documents which allows the Plan to exclude commissioned salesmen from participation, several commissioned salesmen have been allowed to participate.

Henry Manci, who took over White's job when he retired in 1980, has been listed as a participant since 1982.

Donald Ginder has been a participant since 1968. At that time Mr. Ginder was a salaried employee. He has been carried as a participant through an "administrative error," despite the fact that he has been a commissioned salesman since sometime between 1973 and 1981.

James Egizii has been employed by E & F since 1975 and has been a participant since 1977. E & F initially employed James Egizii as a merchandiser and paid him a salary. At some point during his tenure, James Egizii became a wine salesman and wine sales manager. In that position he received both a salary and commissions.

David Hatfield has been employed by E & F since 1977 and has been a participant since 1979. Like James Egizii, Mr. Hatfield has been paid either a salary or a combination of salary and commission. When E & F first hired Hatfield, he worked as a special wine promoter and received a salary. At some point, Hatfield also assumed sales duties, for which he earned a commission.

Lou Wells, Walter Brown, Larry Gawthrop, Robert Stewart, Ronald Adams, and Roger Ortman have been commissioned salesmen for E & F since the early to mid 1980s and have all been treated as participants in the Plan.

White requested pension benefits on April 22, 1993. This lawsuit arises out of the Plan's refusal to pay a pension to White.

### B. *Procedural Background*

This case began on May 20, 1994 when White filed his Complaint, in which he names three separate defendants in three counts. Count I requests relief from the E & F Distributing Company Employees' Pension Plan (hereinafter referred to as simply the Plan); Count II requests relief from Springfield Marine Bank, n/k/a Bank One, Springfield, as Trustee (Bank One); and Count III requests relief from E & F Distributing Company as Plan administrator and employer (E & F).

On July 25, 1994, the Defendants answered the complaint by responding to the allegations of paragraphs 1–16 of each count. Defendants Bank One and E & F, however, failed to respond to several allegations in the Counts against them.

On November 3, 1994, United States Magistrate Judge Charles H. Evans entered the Scheduling Order. The Scheduling Order provided that no motions to amend the pleadings or to join parties could be filed after the date of the order. Additionally, the Scheduling Order set June 23, 1995 as the final date for filing dispositive motions.

On March 31, 1995, Defendants sought leave to file affirmative defenses. Magistrate Judge Evans denied that motion on reconsideration on June 23, 1995. Then Bank One and E & F filed a motion for leave to amend their faulty answers. The Court denied that motion on October 2, 1995, at which time the Court also denied Defendants' objection to Magistrate Judge Evans' order striking their affirmative defenses.

Shortly after this Court denied Defendants leave to amend their answers, Defendants' attorney sought to withdraw from this case. Defendants' attorney felt that the proceedings concerning Defendants' Answers had created a conflict between counsel and clients. Eventually, the Court allowed that

motion and replacement counsel stepped in.[1]

The Court held a final pretrial conference on February 20, 1996. The case was set on the Court's March 1996 trial calendar. Due to the number of criminal and civil jury trials set that month, finding time for the bench trial in this case seemed unlikely. Plaintiff, not wanting to simply waste the time waiting for trial, filed a motion for summary judgment on Counts II and III. And here we are.

Plaintiff's motion precipitated cross-motions and responses. Ordinarily the Court would not entertain such untimely motions for summary judgment (the deadline for filing dispositive motions was June 23, 1995).[2] This case, however, is set for a bench trial. The motions for summary judgment propose to resolve this case, either partially or wholly, without the need for a trial. Therefore, this is one instance in which deviation from the scheduling order actually serves the interests of justice by decreasing the burden on the Court's scarce resources, especially trial time.

### C. *Positions of the Parties*

Plaintiff opened the floodgates to late-filed motions for summary judgment when, on March 15, 1996, he filed a motion for summary judgment. That motion related only to Counts II and III, which are against Bank One and E & F. White's motion, which did not comply with Local Rule 7.1(D)(1) (requiring that a "Statement of Undisputed Facts" accompany all motions for summary judgment), raised only one issue. White argued that because Bank One and E & F neglected to answer Count III, paragraphs 17–20, and Count III, paragraphs 17–24, respectively, they had admitted them under Fed.R.Civ.P. 8(d).

Without objecting to the lateness of Plaintiff's motion, the Plan filed a motion for summary judgment on March 18, 1996. The Plan's motion related only to Count I and argued simply that White was never eligible to participate in the Plan, and consequently could not claim that Defendants wrongly denied him pension benefits. Just like Plaintiff's motion, this motion did not comply with Local Rule 7.1(D)(1).

Also on March 18, 1996, E & F filed a cross-motion for summary judgment with respect to Count III. This motion, again lacking the required statement of undisputed facts, adopted the Plan's argument and additionally asserted that under the Employee Retirement Income Security Act of 1974 (ERISA), White could not recover from a plan fiduciary the relief he sought in Count III. E & F contended that even if it had failed to answer some portions of the complaint, it had denied that White was eligible to participate in the Plan. E & F also argued that White was not entitled to the relief he sought as a matter of law, so E & F's failure to answer part of the Complaint had no effect.

Finally, on March 21, 1996 Bank One chimed in. Its motion addressed Count II. Unlike the other motions, Bank One's motion was accompanied by the required statements regarding disputed and undisputed facts. Like the other two defendants, Bank One argued that White was not eligible to participate in the Plan. Bank One also argued that White could not recover his benefits through an individual action against the Plan's trustee.

On April 4, 1996 White responded to the Plan's motion for summary judgment. This time, White filed a statement of undisputed facts. In that statement, White partially adopted Bank One's statement of undisputed facts and added new information, supported by discovery material.

Finally, on April 12, 1996, Bank One responded to White's statement of undisputed facts.

### II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment "should be granted if the pleadings and

---

**1.** The new attorneys promptly sought reconsideration of the Court's order denying Defendants leave to amend their answers. The Court denied the motion for reconsideration.

**2.** The Court's January 29, 1996 Order makes amply clear the importance of adhering to the dates set in the Scheduling Order.

supporting documents show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Courts must consider evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).[3]

Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987). "A scintilla of evidence in support of the nonmovant's position is insufficient to successfully oppose summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].' " *Brownell v. Figel,* 950 F.2d 1285 (7th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

■ Summary judgment is an appropriate tool in cases such as this one, which are essentially contract interpretation cases. *GCIU Employer Retirement Fund v. Chicago Tribune Co.,* 66 F.3d 862, 864 (7th Cir. 1995) ("In this case, there is no dispute over the material facts and the issue presented is solely one of contract interpretation—a question of law. Resolution at the summary stage is therefore appropriate.") (citations omitted); *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 564–65 (7th Cir.1995) ("Summary judgment is particularly appropriate in cases involving the interpretation of contracts.").

## III. ANALYSIS

In their motions and cross-motions, the parties raise three legal issues: (1) whether White was eligible to participate in the Plan; (2) whether ERISA allows White to recover the damages he seeks from E & F and Bank One; and (3) whether E & F and Bank One must concede defeat because they failed to answer part of the Complaint.

### A. *Was White Eligible to Participate in the Plan?*

All three Defendants join in challenging White's lawsuit because they believe that White was not eligible to participate in the Plan. Defendants do not seem to attack this suit on the basis of standing, but instead challenge White's ultimate right to any benefits.

Whether White was eligible to participate in the Plan is a central question for two reasons. First, if White was not eligible to participate in the Plan, he might not be empowered to bring this suit. Second, if White was not eligible to participate in the Plan, he may not recover any benefits under the Plan.

First, the question of standing. White sues under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1994). Specifically, White proceeds under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), 1132(a)(4), and 1132(c)(1) (1994). These sections provide various methods for enforcing the terms of, and rights under,

---

**3.** Determining what facts are in dispute is made easier by Local Rule 7.1(D). CDIL–LR 7.1(D)(1). That rule requires parties moving for summary judgment to state what undisputed facts support their motion. A party responding to a motion for summary judgment on the ground that disputed factual issues exist must rebut those facts and cite discovery materials that support the contention that genuine issues of material fact exist. The rule allows the Court to deem admitted unopposed "undisputed facts" or strike motions or responses that are not accompanied by required statements of fact. *Cf. Rosemary B. v. Board of Education of Community High School District No. 155,* 52 F.3d 156, 159 (7th Cir.1995) (holding that a district court may strike a response to a summary judgment motion for failure to comply with local rules regarding that response).

pension plans. 29 U.S.C. § 1132 defines the available methods of civil enforcement:

(a) **Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a *participant* or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a <u>participant,</u> beneficiary, or fiduciary for appropriate relief under section 1109 of this title;

(3) by a <u>participant,</u> beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

(4) by the Secretary, or by a <u>participant,</u> or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title; . . .

*Id.* (emphasis added). 29 U.S.C. § 1132(c) provides a remedy for plan administrators' failure to supply requested information to participants or beneficiaries.

ERISA defines the term "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, *who is or may become eligible to receive benefits of any type from an employee benefit plan* which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7) (emphasis added).

The courts have loosened the absolute-seeming language of ERISA to permit suits by employees or former employees who have colorable claims to vested benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989) (holding that the term "participant" includes "former employees who . . . have 'a colorable claim' to vested benefits") (quoting *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.) (per curiam), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)). Only former employees whose claims are "so bizarre or so out of line with existing precedent [that they] necessarily stumble[ ] over the low threshold of the 'colorable' requirement" lack standing. *Panaras v. Liquid Carbonic Industries Corp.,* 74 F.3d 786, 790 (7th Cir.1996) (quoting *Andre v. Salem Technical Services,* 797 F.Supp. 1416 (N.D.Ill.1992)). It is not necessary to decide whether White's claim is bizarre or out of line with existing precedent because Defendants have not explicitly challenged his standing [4] and because the Court ultimately concludes that White is not entitled to benefits under the Plan.

■ But the Court must still determine whether White was ever eligible to receive benefits from the Plan. *See Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1133 (7th Cir. 1992) (noting that when someone sues for benefits due "he or she is essentially asserting his or her contractual rights under an employee benefit Plan. . . . [a]nd, the wrong that the person alleges in bringing such an action is that despite the fact that he or she has satisfied the conditions necessary for benefits under the plan, the defendant has failed to abide by the terms of the plan") (citation omitted). If White was not eligible to participate in the Plan, then his claim is futile and the Court must dismiss this suit. To resolve that question, the Court must look to the documents governing the Plan.

■ In cases brought under ERISA, federal courts apply federal common law principles. *GCIU Employer Retirement Fund,* 66 F.3d at 865. Federal courts "inter-

---

4. The Court would be hesitant to dismiss this case for lack of standing because it is not clear that White's claim is frivolous, although the Court ultimately rejects his claim. *Cf. Sallee v. Rexnord Corp.,* 985 F.2d 927, 929–30 (7th Cir. 1993) (concluding that a claim was not colorable when made by employees who voluntarily left employment knowing that severance benefits did not vest unless they were terminated).

pret the terms of [ERISA governed plans] 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *Hammond v. Fidelity and Guarantee Life Insurance Co.,* 965 F.2d 428, 430 (7th Cir.1992) (quoting *Evans v. Safeco Life Insurance Co.,* 916 F.2d 1437, 1441 (9th Cir. 1990)); *see also Phillips v. Lincoln National Life Insurance Co.,* 978 F.2d 302, 308 (7th Cir.1992). "Where the contract is unambiguous, a court must determine the meaning of the contract as a matter of law. The document should be read as a whole so that all its parts will be given effect." *Murphy,* 61 F.3d at 565 (citations omitted).

White makes two arguments regarding his eligibility. First, he argues that the plain language of the Plan unambiguously included people like him—commissioned salesmen. Second, and alternatively, he argues that the language of the Plan is ambiguous in light of certain extrinsic evidence. White argues that because the Defendants apparently allowed several commissioned salesmen to participate, the terms of the Plan are ambiguous. Even though it may appear to exclude commissioned salesmen, White argues, the Plan's inclusion of some commissioned salesmen means that the Plan was not really meant to exclude commissioned salesmen.

### 1. Is the Language of the Plan Ambiguous on its Face?

The terms of the Plan [5] are not ambiguous. The Plan clearly excludes commissioned salesmen from the class of employees eligible to participate.

The Court must follow well established principles when reading the Plan documents.

First, we interpret the contract in light of the concrete circumstances in which it was written. If, after placing the document in context, the court finds that a contract is unambiguous, it should interpret the contract as a matter of law. A contract is unambiguous only if it is susceptible to only one reasonable interpretation, or put

another way, a contract is ambiguous if both parties were reasonable in adopting their different interpretations of the contract. And although extrinsic evidence can be used to show that a contract is ambiguous, extrinsic evidence cannot be used to *create* an ambiguity.

*Murphy,* 61 F.3d at 565 (citations omitted) (emphasis in original).

Defendants argue that by allowing only "salaried employees" to participate, the Plan excluded other types of employees, namely hourly and commissioned employees. Even if the term "salaried employees" is not crystal clear on its face, Defendants claim, its meaning is clarified by the exclusion from "annual compensation" of all commissions. The Court agrees. The term "salaried employee" is unambiguous and does not, in its ordinary sense, include individuals paid solely a commission based on sales volume. The Court also agrees that the Plan document, taken as a whole, does not include commissioned salesmen, because it excludes from the calculation of pension benefits any earnings in the form of commissions.

The 1968 version of the Plan listed salaried employees as the employees eligible to participate in the Plan. The term salaried means "receiving a salary ... contrasted with hourly-rated." Webster's Third New International Dictionary 2003 (1986). A salary is defined as "Fixed compensation paid regularly (as by the year, quarter, month, or week) for services." *Id.* Salary's obsolete definition is "remuneration for services given." *Id.* The term "salaried employee," therefore, means an employee who is paid a fixed amount of money on a periodic basis (the period being larger than an hour).

White relies on an assortment of definitions to argue that the term "salary" simply means the amount an employer pays an employee. Using that definition would mean that the Plan covered hourly, salaried, and commissioned employees. But White concedes (by including Webster's definition) that

---

**5.** As the Court noted previously, two versions of the Plan applied to White. The Court will direct its analysis at this stage to the 1968 version of the Plan. The 1978 version specifically excluded "commissioned salesmen" from participation.

When the Court reaches White's "extrinsic ambiguity" argument, the Court will consider both plans, because if White's argument that the language of the plan ought to be ignored holds true, it applies to both plans.

salaried excludes hourly-paid employees. White's definition does not mesh with the common understanding that pay comes in three forms, hourly, salaried, and commission. "[I]n the ordinary understanding of the word, 'commission' means compensation based on a percentage of an amount collected, received or agreed to be paid for results accomplished, as distinguished from 'salary' which is a fixed and periodical amount payable without regard to results achieved." *Reliable Life Insurance Co. v. United States,* 356 F.Supp. 235, 239 (E.D.Mo.1973); *see also Lister v. Stark,* No. 88 C 9801 (N.D.Ill, Aug. 1, 1989), 1989 WL 88241 at *2 ("Sun's salesmen receive no salary. They are paid instead on commission."); *Division of Employment and Training v. Moen,* 767 P.2d 1230, 1233, 1234 (Colo.Ct.App.1988).

Even if the term "salaried employee," standing alone, is not crystal clear, its meaning is clear when read together with the other parts of the Plan. The Plan calculates retirement benefits based on "annual compensation." Section II:06 excludes from annual compensation, "commissions, bonuses, overtime, premiums, and other non-recurring compensation." Thus, even if White had been eligible to participate in the Plan, he would have received a pension equal to zero because his entire earnings would have been excluded from his annual compensation.

White attempts to rebut this by arguing that his commission was not "non-recurring compensation" and therefore not excluded by section II:06. But White's commissions varied depending on the volume of sales. Thus, it was in at least one sense non-recurring. Additionally, the modifier "non-recurring" does not apply to commissions. Furthermore, if the Court accepted White's argument, the term "commissions" in section II:06 would be superfluous—a non-recurring commission is a bonus, and bonuses are already excluded from annual compensation. White also comments that because the Plan does not define the term "commission", that term is ambiguous. That is not so. *See Herr v. McCormick Grain—The Heiman Co.,* 841 F.Supp 1500, 1504 (D.Kan.1993) ("There is no ambiguity simply because [the plan] does not define 'commission sales-

men'—the term has its plain and ordinary meaning."), *aff'd in part, vacated in part sub nom., Herr v. Heiman,* 75 F.3d 1509 (10th Cir.1996).

After considering the entire Plan document, the Court cannot find that the language is ambiguous. Instead, the Plan unambiguously excludes employees paid solely on commission from participation. Only a tortured reading of the Plan would allow White to qualify as a participant. Tortured readings are, by their nature, inconsistent with the ordinary and popular sense of words.

## 2. Does the Doctrine of "Extrinsic Ambiguity" Apply?

White argues that although the language used in the Plan seems to exclude commissioned salesmen, extrinsic evidence shows that E & F did not really mean what it said when it adopted the Plan. White invokes the doctrine of "extrinsic ambiguity." *See FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 620 (7th Cir.1989), *cert. denied sub nom. W.R. Grace & Co.—Connecticut v. FDIC,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). As the Court will explain, White misuses the concept of extrinsic ambiguity. White does not suggest that the terms "salaried employee" and "commission" meant something special and unusual to the people who wrote the Plan. Instead, White really hopes to do what he suggests in a footnote in his response to the Plan's motion for summary judgment: ignore the unequivocal terms of the written contract.

In contract law, two types of ambiguity exist: intrinsic ambiguity and extrinsic ambiguity. "The first is present when from just reading the contract it is apparent that the contract is unclear. The second is present when although the contract is clear at the semantic or literal level, anyone who knew something about the subject matter would realize that the contract did not mean what it said." *United States v. National Steel Corp.,* 75 F.3d 1146, 1149 (7th Cir.1996); *see also AM International, Inc., v. Graphic Management Assocs., Inc.,* 44 F.3d 572, 574 (7th Cir.1995).

Generally, "[e]xtrinsic evidence should not be used where the contract is unambiguous." *GCIU Employer Retirement Fund,* 66 F.3d at 865; *Murphy,* 61 F.3d at 565. When a party can demonstrate that an extrinsic ambiguity exists, however, a court may admit extrinsic evidence to allow that party to prove the real meaning of the contract terms. The doctrine of extrinsic ambiguity applies when "the parties were employing a special vocabulary, so that the meaning of the contract is the opposite of what an outsider would think." *AM International,* 44 F.3d at 578. Extrinsic evidence comes into play when the parties "couldn't have meant what they seem to have said." *Pierce v. Atchison, T & S.F. Ry.,* 65 F.3d 562, 568 (7th Cir.1995) (quoting *Matter of Stoecker,* 5 F.3d 1022, 1029 (7th Cir.1993)).

White argues that the fact that Defendants apparently treated a number of commissioned employees as participants alters the meaning of the Plan. The documents governing the Plan document clearly allow Defendants to exclude people who earn only a commission. The fact that Defendants allowed some people whom they could exclude to participate does not make the meaning of any of the words used to define the class of people eligible to participate ambiguous. Taking the proffered evidence that the Plan treats some commissioned employees as participants in the light most favorable to White does not suggest that the Plan is ambiguous. Nothing suggests that the terms of the Plan had special meanings to the parties. *Cf. Herr,* 841 F.Supp. at 1504. Instead, the evidence suggests that Defendants may have simply ignored part of the Plan. To call that an ambiguity would be akin to creating an ambiguity based on extrinsic evidence, something the Court may not do. *Murphy,* 61 F.3d at 565.

The Eighth Circuit rejected a claim of ambiguity in a similar situation. In *Howe v. Varity Corp.,* 896 F.2d 1107 (8th Cir.1990), *aff'd,* ── U.S. ──, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the court disapproved the district court's use of extrinsic evidence.

... The court found that in the past defendants had exempted retirees from plan changes, thereby implying that retir-

ees' benefits were "untouchable." As a general rule, however, extrinsic evidence may not be relied upon where the documents are unambiguous on their face. See, e.g., *Anderson [v. Alpha Portland Indus., Inc.,* 836 F.2d 1512, 1517 (8th Cir. 1988) ] ("[I]f the contract is deemed ambiguous, *then* the court may weigh extrinsic evidence in its construction.") (quoting *Local Union No. 150-A v. Dubuque Packing Co.,* 756 F.2d 66, 69 (8th Cir.1985)) (emphasis added). Moreover, it is the extrinsic evidence itself, in our view, that is ambiguous. Merely because defendant chose to exempt retirees from plan changes in the past does not mean that defendants considered themselves forever bound to do so. Plaintiffs have not argued estoppel, nor have they suggested any detrimental reliance on defendants' practices.

*Howe,* 896 F.2d at 1110. Although *Howe* is not identical to the present case, the Eighth Circuit makes clear that only if a contract is ambiguous does extrinsic evidence alter its meaning. In this case, even taking White's evidence in the light most favorable to him, the terms of the contract do not mean anything other than what they might mean to an ordinary reader. *Cf. Herr v. McCormick Grain,* 841 F.Supp at 1503–04 (rejecting extrinsic evidence to inform the use of the term "commission salesman" where that term retained its ordinary meaning and the plaintiff did not suggest that it meant anything different).

### 3. Does Defendants' Conduct Toward Other Commissioned Salesmen Affect White's Eligibility?

Now the Court must tackle the question implicitly raised by White's response to Defendants' motions: does Defendants' apparent disregard of the language excluding commissioned salesmen entitle White to pension benefits?

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Because plans must be maintained pursuant to a written instrument, the Seventh Circuit has held that plan trustees cannot be liable to benefit claimants for

benefits they are not entitled to under the terms of the plan. In *Cummings v. Briggs & Stratton Retirement Plan,* 797 F.2d 383, 387 (7th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986), the court stated:

> ... ERISA plan administrators are required to act consistently with the Plan's written terms. Plan fiduciaries are required to act solely in 'accordance with the documents and instruments governing the plan.' Section 1104(a)(1)(D).
>
> .   .   .   .   .
>
> ... There is no question that ... under the terms of the Plan the plaintiffs were not entitled to receive benefits.... Under the technical terms of the Plan, defendants violated no provision of ERISA and committed no legal wrong.

*Id.* One reason why plan fiduciaries should not be forced to pay benefits not called for in the written plan is that "[f]orcing trustees of a plan to pay benefits which are not part of the written terms of the program disrupts the actuarial balance of the Plan and potentially jeopardizes the pension rights of others legitimately entitled to receive them." *Id.* at 389; *see also Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Assocs.,* 53 F.3d 172 (7th Cir.1995); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296 (5th Cir.1989).

Not only has the Seventh Circuit been reluctant to allow actions for benefits when a plan does not provide for them, but it has also held that strict enforcement of a plan against one employee and not against others does not violate ERISA. In *McGath v. Auto–Body North Shore, Inc.,* 7 F.3d 665 (7th Cir.1993), an employee argued that he was the victim of discrimination under 29 U.S.C. § 1140 because the trustees of his employer's pension plan strictly enforced eligibility rules to keep him out of the plan while they apparently allowed in other employees who did not qualify. *Id.* at 669–670. The Seventh Circuit said that such conduct by a trustee did not amount to discrimination. "Because the plan must be administered according to its terms, [plaintiff] cannot

complain because he is held to those terms; this is true even if the rules were bent for another individual." *Id.* at 670 (footnote omitted). Although *McGath* involved a claim of discrimination under ERISA § 510, it is still instructive. *McGath* held that an employee cannot complain about treatment by his employer or the plan trustees so long as they acted within the scope of the written documents. Furthermore, the Seventh Circuit's statement was not based as much on ERISA § 510 as on 29 U.S.C. § 1104(a)(1)(D), which provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan." 7 F.3d at 670 n. 5.

Allowing White to recover benefits would undermine the explicit terms of the Plan. The Court does not know why some commissioned salesmen at E & F have been allowed to participate in the Plan. Perhaps the trustees have violated their fiduciary duties to the other participants in the Plan by admitting unqualified participants. That fact, however, does not affect this case. White is clearly not eligible to participate in the Plan. Therefore, the Plan and its fiduciaries cannot be held liable for failing to pay him a pension.

Possibly, White could have invoked estoppel to claim that Defendants could not deny him the right to participate after having allowed other commissioned salesmen to participate. *See Weatherly v. Illinois Bell Telephone,* 856 F.Supp. 1301 (N.D.Ill.1994).[6] The Seventh Circuit has approved the use of equitable estoppel in at least one type of case. *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990); *see also Krawczyk v. Harnischfeger Corp.,* 41 F.3d 276, 280 (7th Cir.1994) (noting that the Seventh Circuit has approved use of estoppel for unfunded welfare plans, but declining to address whether the concept should apply to funded plans); *Russo v. Health, Welfare & Pension Fund, Local 705 International Brotherhood of Teamsters,* 984 F.2d 762, 767 (7th Cir. 1993). But the Court can find no authority for the proposition that plan fiduciaries may

---

**6.** White has not argued estoppel. Arguments not raised in opposition to summary judgment motions are waived. *See Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir.1992).

be estopped to withhold pension benefits from a former employee simply because the fiduciaries have allowed other similarly situated employees to participate.[7] White might also argue that Defendants' conduct constituted an informal modification of the terms of the agreement. But such modifications are not permitted. "[A]s a general rule, ERISA does not recognize oral modification of a written benefit plan...." *Russo*, 984 F.2d at 767.

Even if the Court adopted the theory White proposes, it is unclear what benefits he would be entitled to. No employees hired before 1980 who have been exclusively commissioned salesmen have been allowed to participate. White lists three employees hired before 1980 who have been listed as participants: Donald Ginder, James Egizii, and David Hatfield. These three employees were all either eligible to participate under the plain language of the Plan at some point since 1968 or are still eligible.

Mr. Ginder has been a participant since 1968, when he was a salaried employee. He has been carried as a participant through an "administrative error," despite becoming a commissioned salesman since at some point between 1973 and 1981. Mr. Egizii has been employed by E & F since 1975 and has been a participant since 1977. During his employment, Mr. Egizii has been paid either a salary or a combination of salary and commission. Therefore, Mr. Egizii has always been eligible to participate, but may not be entitled to a pension based on his total compensation. Mr. Hatfield has been employed by E & F since 1977 and has been a participant since 1979. Like Mr. Egizii, Mr. Hatfield has been paid either a salary or a combination of salary and commission.[8]

The Court declines White's invitation to ignore the unambiguous language of the Plan. Even if the Court did ignore the Plan's exclusion of commissioned salesmen,

the extrinsic evidence White offers does not lead to the conclusion that White should receive pension benefits. *See Howe*, 896 F.2d at 1110 ("[I]t is the extrinsic evidence itself ... that is ambiguous.")

**B.** *Is White Entitled to the Relief He Seeks in Counts II and III?*

■ Even though Defendants are entitled to summary judgment because White was not eligible to become a participant, the Court will address Bank One's and E & F's alternate argument that if White was eligible to participate in the Plan, ERISA does not authorize the relief he seeks from them.

Counts II and III are virtually identical. These Counts state that they arise under 29 U.S.C. §§ 1132(a)(1)(B), 1132(c)(1), 1109, 1132(a)(2), 1025(c), and 1132(a)(4). Count II demands: (1) that the Court order Bank One to pay Plaintiff all benefits due under the Plan, (2) that the Court declare that Plaintiff has vested and non-forfeitable rights in the money deemed due, and (3) costs and attorneys fee's. Count III requests identical relief with respect to E & F.

Of the ERISA sections listed in the Complaint only two allow civil actions against Bank One and E & F. Sections 1132(a)(2) and 1132(c) provide for relief against fiduciaries and administrators respectively. The Court will address only § 1132(a)(2) because whether White is entitled to relief under 1132(c) depends on whether he was a participant—an issue the Court has already addressed.

■ Section 1132(a)(2) provides that a civil action may be brought "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1109 provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter

---

7. In this case, White did not rely on a promise of benefits or an oral interpretation of the plan. *See Russo*, 984 F.2d at 767; *cf. Miller v. Taylor Insulation Co.*, 39 F.3d 755 (7th Cir.1994). In fact, White has introduced no evidence to support a claim of estoppel.

8. White also lists several commissioned salesmen who worked for E & F, starting after White retired, who have been listed as Plan participants. If the Court accepted White's proposition that the unambiguous language of the Plan may be ignored, the Court could not base White's remedy on informal changes to the Plan that occurred after White retired from E & F.

shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

A plan participant may not individually recover unpaid benefits under § 1132(a)(2). *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). White suggests that the Supreme Court's recent decision in *Varity Corp. v. Howe,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), somehow changed the law. In *Varity Corp.,* however, the Court distinguished *Russell* because that case dealt only with § 1132(a)(2), while the plaintiff in *Varity Corp.* had proceeded under § 1132(a)(3). *Id.* at ——, 116 S.Ct. at 1076.

White makes two arguments to evade the consequences of proceeding solely under 1132(a)(2). First, he argues that the duty he is trying to enforce is one found in the Plan, not in ERISA. Second, he argues that his failure to bring his suit under 29 U.S.C. § 1132(a)(3), which allows individual relief, is inconsequential because he may amend his pleadings to reflect the evidence.

White's first argument is circular. While the Plan imposes duties on its fiduciaries, ERISA imposes a duty on the fiduciaries to follow the terms of the Plan. 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and— ... (D) in accordance with the documents and instruments governing the plan ... "). Therefore, although White may rely on the language of the Plan, any right to sue the fiduciaries comes from ERISA.

White's second argument also fails. It should be clear to everyone involved in this case that the Court does not take lightly motions to amend the pleadings filed late in the case. Furthermore, amending the Complaint would have no effect at this point, because the Court has entered a Pretrial Order. That Order does not mention 29 U.S.C. § 1132(a)(3), although it does name all the other statute sections included in the Complaint. Therefore, Plaintiff has forfeited his right to proceed under that section. *See Nagy v. Riblet Products Corp.,* 79 F.3d 572, 574–75 (7th Cir.1996).

White also improperly relies on amendments to conform pleadings to the evidence. Rule 15(b) allows such amendments "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties...." Fed.R.Civ.P. 15(c). Obviously, Defendants do not consent to Plaintiff's attempt to proceed under § 1132(a)(3).

### C. *Defendants' Partial Failure to Answer*

Ultimately, it is unnecessary to resolve the third legal issue the parties raise in their motions. White was never eligible to participate in the Plan and the relief he seeks in Counts II and III is barred by ERISA. Therefore, even if Bank One and E & F did admit part of the Complaint by failing to answer it, their admission would have no impact on the outcome of this case.

### IV. CONCLUSION

Despite all the wrangling over the pleadings that has occurred in this case, this case boils down to a simple legal question that could, and probably should, have been resolved by a motion to dismiss or a timely-filed motion for summary judgment. Considering the resources the parties and the Court have expended in this matter, the outcome is unfortunate, but it is the outcome that the law mandates. The Court must grant summary judgment in favor of Defendants because White is not entitled to the relief he seeks.

Ergo, Plaintiff's Motion for Partial Summary Judgment is DENIED; Defendant E & F Distributing Company Employees' Pension Plan's Motion for Partial Summary Judgment is ALLOWED; Defendant E & F Distributing Company, as Plan Administrator and Employer's Cross–Motion for Summary Judgment is ALLOWED; Defendant Springfield Marine Bank, n/k/a Bank One, Springfield, as trustee's Cross–Motion for Summary Judgment on Count II is ALLOWED.

As no other issues remain to be resolved, this cause is DISMISSED with prejudice, each party to bear its own costs.

CASE CLOSED.