Frank **MEAGHER**, Plaintiff–Appellant,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS PENSION PLAN; William Winpisinger, Eugene Glover; and George Kourpias, as fiduciaries and trustees of the International Association of Machinists and Aerospace Workers Pension Plan, Defendants–Appellees.**

No. 87–2312.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1988.

Decided Sept. 12, 1988.

Marc H. Greenberg, Law Offices of Marc H. Greenberg, San Francisco, Cal., for plaintiff-appellant.

Thomas J. Hart, Thomas Hart & Associates, Washington, D.C., and Richard P. Donaldson, Donaldson & Associates, Seattle, Wash., for defendants-appellees.

Before SNEED, HUG and KOZINSKI, Circuit Judges.

HUG, Circuit Judge:

Plaintiff Frank Meagher appeals from the district court's award of summary judgment in favor of the International Association of Machinists and Aerospace Workers Pension Plan ("the Plan") and the Plan's trustees. The district court held that Meagher's action was barred by the applicable statute of limitations under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1113 (1982). We reverse the district court's judgment.

I

Frank Meagher was an officer of the International Association of Machinists and Aerospace Workers ("IAM") for 20 and one-half years prior to his retirement on July 1, 1977. That organization, as an employer, administered an employee pension plan for the officers, organizers, and support staff it employed. Meagher's rights under the Plan had fully vested and accrued years prior to his retirement. The Plan contained a "living pension" feature that increased the monthly benefit payments proportionately to any future salary increases of the position from which the pensioner retired. Thus, under this provision, Meagher's pension benefits were tied to the current salary of the job he held before he retired. *See Shaw v. Int'l. Assoc. of Machinists and Aerospace Workers Pension Plan,* 750 F.2d 1458, 1459–60

(9th Cir.) (explaining the living pension feature), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985).

In September, 1976, the delegates to the 1976 IAM convention voted to amend the pension plan to phase out the living pension feature. Under the amendment, the living pension increases were to be progressively cut back from January 1, 1979 on, and were scheduled to end January 1, 1985. In February, 1979, soon after the Plan's trustees began implementing the phase-out, letters were sent to all retirees explaining the effect of the amendment upon their benefits. In October, 1979, the trustees sent Summary Plan Descriptions to all plan participants, describing how the living pension feature was being phased out. The cover letter stated that the Plan had been qualified by the IRS and had been "revised to comply with [ERISA]."

On December 1, 1981, a plan participant, Edward Shaw, filed a class action in federal district court against the Plan and its trustees, challenging the application of the amendment. Shaw, who had retired on January 1, 1975, brought the action individually and on behalf of those similarly situated. The district court in that action found that "the actions of defendants in attempting to phase-out the living pension feature in the pension plan were not justified under ERISA...." *Shaw v. International Ass'n of Machinists–Aerospace,* 563 F.Supp. 653, 657 (C.D.Cal.1983). We affirmed on January 11, 1985. *See Shaw,* 750 F.2d at 1466.

Our analysis in *Shaw* focused on 29 U.S.C. § 1054(g)(1), which provides: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title."

29 U.S.C. § 1054(g)(1) (1982).[1] Section 1082(c)(8) sets forth certain criteria an amendment must satisfy in order to reduce accrued benefits. One criterion is that the amendment must meet with the approval of the Secretary of the Treasury. 29 U.S.C. § 1082(c)(8) (1982). The Secretary may approve the amendment only if he determines that it is "necessary because of a substantial business hardship." *Id.* The trustees had not obtained the Secretary's approval by the time of the *Shaw* case, nor have they obtained it since.[2] Under the plain language of section 1082(c)(8), "No amendment ... which reduces the accrued benefits of *any* participant *shall take effect*" unless the Secretary approves it. (Emphasis added.) Because an amendment cannot take effect without the Secretary's approval, it cannot be applied to reduce the accrued benefits of any participant under the Plan, as specified in 29 U.S.C. § 1054(g)(1). The amendment is simply inoperative, and the Plan must be administered without giving any effect to the amendment.

In *Shaw,* we had to determine first whether the living pension feature was, indeed, an accrued benefit, for the prohibition of section 1054(g)(1) applies only to the reduction of "accrued benefits," and the Secretary's approval, as provided for in section 1082(c)(8), is necessary only for amendments which reduce the "accrued benefits" of any participant. We determined in *Shaw* that the living pension feature was an accrued benefit, stating: "[The] entire [IAM] pension benefit—including the living pension feature—was promised, anticipated, and *accrued.*" *Shaw,* 750 F.2d 1466 (emphasis added). We noted the Supreme Court's statement that " 'Congress through ERISA wanted to

---

**1.** The amended version of 29 U.S.C. § 1054(g)—which was not before us in *Shaw*—reads as follows: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title." 29 U.S.C.A. § 1054(g)(1) (Supp.1988). The reference to section 1441 in the amended version, however, does not affect our analysis here. The parties do not claim that the amendment in question is one described in section 1441. Thus, for simplicity's sake, we will refer to section 1054 in its pre-amended form.

**2.** Section 1082(c)(8) provides a ninety-day time limit after a notice of an amendment is filed within which to approve or disapprove the amendment. If no action is taken, it is deemed approved. In this case, the required notice of the amendment was never filed with the Secretary.

ensure that "if a worker has been *promised a defined pension benefit* upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—... he actually receives it." ' " *Shaw*, 750 F.2d at 1465, *quoting Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981).

Because the amendment was one that decreased accrued benefits and the Secretary's approval was not obtained, we held that the amendment did not take effect. Having made this determination, it was clear that the amendment could not be applied to *anyone* because the amendment had not taken legal effect, and, indeed, could not take effect until the Secretary's approval had been obtained in accordance with 29 U.S.C. § 1082(c)(8). We stated in *Shaw:*

> The IAM declined to take advantage of the statutory escape valve that allows the Secretary to approve amendments decreasing accrued benefits upon a showing of substantial business hardship. 29 U.S.C. § 1082(c)(8). Perhaps the IAM can now submit its discussion of financial hardship, which is irrelevant to our decision, to the Secretary. We see no time limit on applications brought under that escape valve section.

*Shaw*, 750 F.2d at 1465. The IAM to this day has not done so and, thus, the amendment still has not taken effect.

Following our decision, the parties to *Shaw* submitted, apparently on their own initiative, a program of compliance with the *Shaw* judgment. The defendants agreed to apply prospectively the living pension feature to all participants who, like Shaw, had retired prior to January 1, 1977, and to also reimburse those retirees for the past adjustments they were entitled to but did not receive. *See* ER 9–10. The parties, however, agreed that these measures would be taken with respect to the pre-January 1,

1977 retirees only—the class of litigants in *Shaw*—and not to any other retirees. They then requested the district court to confirm the essential portions of the program of compliance, which it did by issuing an order outlining the program.[3] The trustees continued to apply the ineffective amendment to Meagher and others who were not *Shaw* litigants. This, of course, was in violation of section 1054(g)(1). The trustees could not legally apply the amendment to anyone until it had taken effect by virtue of the Secretary's approval.

The trustees disclosed the *Shaw* litigation to the plan beneficiaries in a letter dated February 14, 1986. The letter stated, "Please note that *the judgment applies only to pensioners who retired before January 1, 1977, and their beneficiaries.*" (Emphasis in original.) Ten days later, Meagher wrote to one of the trustees asking why the *Shaw* judgment did not also apply to him. The trustee wrote back, simply reiterating the trustees' previous position that the *Shaw* ruling applied only to those who retired prior to January 1, 1977.

About two months later, on May 13, 1986, Meagher filed this action in federal district court. He claimed that the application of the amendment to reduce his accrued benefits violated section 1054(g)(1) of ERISA as determined by *Shaw*. He sought a declaratory judgment that the application of the amendment was a violation of ERISA and a judgment ordering the trustees to pay to him the amount of benefits he is entitled to receive without application of the amendment.

The parties filed cross-motions for summary judgment, and the district court granted the defendants' motion. It did so on the basis that the applicable statute of limitations under ERISA, 29 U.S.C. § 1113, barred Meagher's action. Meagher appealed. We exercise our jurisdiction under 28 U.S.C. § 1291 (1982). Our review is *de*

**3.** The order states that the remedy is limited to the *Shaw* litigants. This is not surprising. The order could apply only to those litigants before the court in that case. That the effect of the order was limited, however, certainly does not mean that the effect of our decision was so

limited. Any agreement between the *Shaw* litigants and the Plan and its trustees that purported to bind pensioners who retired *subsequent* to January 1, 1977 would not be binding upon such pensioners. They are not part of the *Shaw* litigants class.

**1422**

*novo. Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

## II

■ The statute of limitations, 29 U.S.C. § 1113, provides as follows:

§ 1113. Limitation of actions

(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

To apply the limitations period, we must first isolate and define the underlying violation upon which Meagher's claim is founded. The district court proceeded on the assumption that the violation in this case was the enactment of the amendment. It noted that Meagher had to have been aware of the amendment at least by October 10, 1979 because the trustees sent a letter on that date to all plan participants explicitly informing them of the amendment. The court explained, "At that time Meagher had knowledge of the events which gave rise to his cause of action."

Applying the six-year period,[4] the court found that Meagher's time for filing suit expired in October of 1985, seven months before Meagher filed his action.

Meagher's cause of action accrued only when his accrued benefits were "decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title." 29 U.S.C. § 1054(g)(1). The district court suggests that passage of the inoperative amendment, or when Meagher found out the amendment was passed, was the precise accrual date. We disagree. Meagher was harmed only by the wrongful *application* of the amendment. Only then were his accrued benefits *decreased*. The passage of the amendment was not a violation of ERISA; an amendment must be adopted before it may even be submitted to the Secretary for approval.[5]

## III

■ Meagher's claim is brought under 29 U.S.C. § 1132(a)(1)(B) (1982), which provides:

A civil action may be brought ... by a participant or beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. ...

ERISA charges the trustees and fiduciaries with the duty to administer the pension plan "in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D) (1982).

Despite our holding in *Shaw*, the trustees have continued to apply the inoperative

---

4. It is unclear why the court applied the six-year period to commence from Meagher's knowledge of the amendment. Knowledge of the violation or breach commences the three-year period. *See* 29 U.S.C. § 1113(a). However, this point is irrelevant to our analysis because we find that the district court erred in identifying the underlying violation.

5. Section 1082(c)(8) is structured such that an amendment submitted to the Secretary must already meet the criteria outlined in subsection (A), (B), and (C). Subsection A refers to an amendment which "*is adopted* after the close of such plan year" (emphasis added). Thus, amendments submitted to the Secretary must have been adopted, not simply proposed.

amendment to all but *Shaw* litigants. This is a denial of benefits to which Meagher was, and will become, entitled and with respect to which he seeks "to recover ... [and] to enforce his rights under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B). Each check issued to him in an amount reduced under the inoperative amendment constitutes a fresh breach by the trustees of their duty to administer the pension plan in accordance with the documents and instruments of the Plan that are not inconsistent with ERISA, as required by 29 U.S.C. § 1104(a)(1)(D). A separate cause of action arises with the issuance of each check, and the limitations period runs separately for each cause of action.

The limitations period is six years from the breach or violation, or three years from Meagher's knowledge of the breach or violation, whichever is earlier. 29 U.S.C. § 1113(a). We have held that the "statute of limitations is triggered by [a claimant's] knowledge of the transaction that constituted the alleged violation, not by [his] knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir.1985). Each time Meagher received a check, he had knowledge of the transaction, though he may not have known at the time that the reduction in benefits was unlawful under ERISA.

 Thus, the issuance of each check commenced a six-year period and Meagher's receipt of the check commenced a three-year period. Since the three-year period expires earlier, it is the one we apply. 29 U.S.C. § 1113(a)(2). Meagher brought this action on May 13, 1986. To determine how many breaches are actionable, we calculate three years back from May 13, 1986.

Meagher's claims are thus timely for all checks issued since May 13, 1983. Meagher has stated timely claims under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due him under the Plan.[6]

## CONCLUSION

In *Shaw*, we held that the amendment to the pension plan reduced accrued benefits and was inoperative until approved by the Secretary of the Treasury. No approval has since been obtained, and we hold that the amendment remains inoperative to all participants. Meagher's action for recovery of benefits is timely as to all benefits withheld since May 13, 1983 and as to the declaration of future benefits.

We reverse and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

**6.** Meagher also brought his action under 29 U.S.C. § 1132(a)(3) for equitable relief and damages. The Supreme Court in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), held that fiduciaries of a pension plan could not be held personally liable to a plan beneficiary for extracontractual compensatory or punitive damages under 29 U.S.C. § 1132(a)(2) but did not reach the question of whether they could be liable under 29 U.S.C. § 1132(a)(3). Here, the claim against the fiduciaries individually was for failure to pay the benefits to which Meagher was contractually entitled under the pension plan. No basis for "extra contractual" damages or punitive damages was alleged.

Meagher has received the full relief allowable under the applicable limitations statute provided by 29 U.S.C. § 1132(a)(1)(B). His rights have been clarified and his rights to his pension, not decreased by the ineffective amendment, have been established. To the extent that such relief may also be embraced by 29 U.S.C. § 1132(a)(3), any declaration to that effect would be supererogatory.