Ronald L. ZIEGLER; Douglas M. Ziegler; Allen S. Ziegler; Westco Products, Inc., a California corporation, on behalf of the Westco Products Retirement Plan, Plaintiffs–Appellants,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a specially chartered Connecticut corporation; Connecticut General Pension Services, Inc., a Connecticut corporation, Defendants–Appellees.

No. 89–55119.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1990.

Decided Oct. 10, 1990.

Robert Ackerman, Corleto & Ackerman, Encino, Cal., for plaintiffs-appellants.

James F. Jorden, Waldemar J. Pflepsen, Jr., Tew, Jordan & Schulte, Washington, D.C., and Joseph P. Busch, III, Eloise Hock–Feinstein, Gibson, Dunn & Crutcher, Newport Beach, Cal., for defendants-appellees.

Before GOODWIN, Chief Circuit Judge, TANG, Circuit Judge, and MARQUEZ,* District Judge.

TANG, Circuit Judge:

Westco Products, Inc. ("Westco") and its pension plan administrators, Ronald, Douglas, and Allen Ziegler, appeal judgment on the pleadings for Connecticut General Life Insurance Company ("Connecticut General") in their suit against Connecticut General for violations of the Employee Retirement Income Security Act ("ERISA"). The district court held that the statute of limitations bars Westco's claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Westco, a California manufacturer of baking ingredients, established a pension plan governed by ERISA, 29 U.S.C. §§ 1001–1461, and administered by the Zieglers, officers of Westco. In August 1983, Westco's pension plan contracted with Connecticut General to invest Westco's pension funds. The investment agreement provided two options for valuation of the account upon termination of the agreement and liquidation of the account. Under the "book value" option, Westco could receive its investment funds in installments over five years. Under the "market value" option, Westco could receive its funds in one lump sum adjusted according to a "market value" formula.

In May 1984, Westco told Connecticut General of Westco's desire to terminate its investment agreements with Connecticut General. By a letter dated July 23, 1984, Connecticut General informed Westco of the effect of the "market value" formula on Westco funds upon termination. Connecticut General stated that, because of the "market value" adjustment, upon termination it would retain $192,058 of Westco plan assets then totaling $1,112,514, and that Westco would receive the balance. On August 1, 1984, Westco wrote to Connecticut General asking it to "disregard" West-

---

* Honorable Alfredo C. Marquez, United States District Judge for the District of Arizona, sitting by designation.

co's May request for termination while Westco considered its "alternatives." On January 15, 1985, Connecticut General wrote to Westco explaining the "market value" adjustment formula and its effect on Westco funds.

On February 15, 1985, Westco wrote Connecticut General requesting termination of the investment agreement, liquidation of the account, and payment to Westco's pension plan in a lump sum. On March 5, 1985, Connecticut General completed the transfers of funds. On March 12, 1985, Connecticut General confirmed the transfers by letter and informed Westco of the final effect of the "market value" adjustment on Westco pension funds. Of a then total $1,089,374 in Westco assets, Connecticut General retained $94,104 for its "market value" adjustment, and distributed to Westco the $995,270 balance.

On March 1, 1988, Westco and the Zieglers sued Connecticut General in federal court for ERISA violations and pendent state law claims. Westco alleged that Connecticut General's "market value" adjustment, resulting in its retention of nearly a hundred thousand dollars in Westco pension assets, breached Connecticut General's fiduciary duties under ERISA. Specifically, Westco alleged that Connecticut General: 1) failed to perform exclusively for the benefit of plan participants and beneficiaries in violation of 29 U.S.C. § 1104, and 2) transferred plan assets to a party-in-interest (itself) in violation of 29 U.S.C. § 1106.

On December 29, 1988, the district court entered judgment on the pleadings for Connecticut General on all counts, dismissing the complaint. The district court held that ERISA preempts Westco's state law claims and that the ERISA statute of limitations, 29 U.S.C. § 1113, bars Westco's ERISA claims. Westco timely appeals judgment on its ERISA claims.

## STANDARD OF REVIEW

In reviewing the district court's grant of summary judgment for Connecticut General, we determine de novo whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). Because the parties do not dispute the facts in this case, we focus on the application of the ERISA statute of limitations to Westco's claims.

## DISCUSSION

Westco contends that its cause of action did not accrue and the statute of limitations did not begin to run until Connecticut General's alleged breach of its ERISA duties actually harmed Westco. Westco was not actually harmed, it argues, until March 5, 1985 at the earliest, when Connecticut General completed liquidation of Westco's account and the transfers to itself and Westco pursuant to the "market value" option. Westco concludes, therefore, that its March 1, 1988 complaint was timely filed within the three year limit.

■ As we shall discuss, however, not all ERISA actions for breach of fiduciary duties require an occurrence of harm before they will accrue. Indeed, the statute of limitations on ERISA actions such as Westco's includes no requirement of actual harm. Instead, the statute provides in relevant part:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after . . .

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. . . .

29 U.S.C. § 1113. The statute of limitations itself indicates a two-step analysis of accrual of an ERISA action: first, when did the alleged "breach or violation" occur; and second, when did Westco have "actual knowledge" of the breach or violation? We apply this analysis to Westco's case.

### I. Occurrence of Breach or Violation

■ In considering the ERISA statute of limitations, we have previously stated that "[t]o apply the limitations period, we must

first isolate and define the underlying violation upon which ... [plaintiff's] claim is founded." *Meagher v. International Ass'n of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418, 1422 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1943, 104 L.Ed.2d 414 (1989). In *M & R Inv. Co. v. Fitzsimmons*, 685 F.2d 283 (9th Cir.1982), plaintiff, like Westco here, alleged a breach of 29 U.S.C. § 1104. In that case, we identified the breach of the ERISA fiduciary duty in a contract provision which illegally authorized loans to a party-in-interest. We held that it was unnecessary to await disbursement of the loans themselves (completed after the defendant had resolved the party-in-interest conflict) to identify the ERISA violation. *Id.* at 287. Thus, it was also unnecessary to await an actual injury or harm before the ERISA violation became actionable. We concluded that because "the culpability arises with the *contract's creation,*" the *M & R Investment* defendant's elimination of the violative conflict before distribution did not relieve the defendant of liability for its breach. *Id.* (emphasis added).

■ As under the *M & R Investment* rationale, plaintiffs need not allege actual injuries to prosecute certain ERISA violations. Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant. *See id.* at 287; *Donovan v. Mazzola*, 716 F.2d 1226, 1237–38 (9th Cir.1983), *cert. denied* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (ERISA creates certain per se prohibitions). Indeed, plaintiffs need not prove any injury in order to prosecute violations of the ERISA provisions that Westco alleges Connecticut General violated. Under 29 U.S.C. § 1104(a), which Westco asserts, an ERISA plaintiff may prosecute a plan fiduciary who fails to perform for the exclusive benefit of participants and their beneficiaries regardless of cost or loss to the partici-

pants and their beneficiaries. Likewise, under 29 U.S.C. § 1106(a)(1)(D), which Westco also asserts, an ERISA plaintiff may prosecute for a fiduciary's transfer of plan assets to a party-in-interest regardless of cost or loss to the plan.

Following the *M & R Investment* rationale, we hold that the ERISA breach or violation, if any, occurred in Westco's case upon execution of the 1983 investment agreement containing the "market value" option. As in *M & R Investment,* the alleged breach in Westco's case occurred upon the contract's creation.

Westco argues against this conclusion, contending that no breach could have occurred absent actual harm to Westco. Indeed, the harm to Westco from the "market value" option remained entirely theoretical until the March 1985 distribution. Westco cites *Meagher v. International Ass'n of Machinists*, 856 F.2d 1418, as authority countervailing to our *M & R Investment* analysis. We must reject Westco's argument.

The type of ERISA violations plaintiffs alleged readily distinguishes *Meagher* from Westco's case, however. In *Meagher,* the fiduciary attempted to implement an invalid contract amendment in violation of ERISA, 29 U.S.C. § 1054(g). *Id.* at 1422. Unlike in Westco's case, the *Meagher* cause of action entailed an ERISA provision specifically requiring an actual injury to the plaintiff, a reduction in accrued benefits. *See* 29 U.S.C. § 1054(g). We therefore held in *Meagher* that the plaintiff's cause accrued and the statute of limitations began to run "only by the wrongful application of the amendment" to the plaintiff's benefits, for "[o]nly then were his accrued benefits *decreased.*" *Id.* at 1422 (emphasis in original).[1]

Unlike the plaintiff in *Meagher,* Westco need never have suffered an actual harm for its ERISA cause of action to have ac-

---

1. In *Meagher,* as in Westco's case, the plaintiff also alleged that the plan trustees violated 29 U.S.C. § 1104(a)(1)(D), ERISA trustees' statutory duty to administer pension plans in accordance with ERISA. *Meagher,* 856 F.2d at 1423. As we have previously noted, an action under 29

U.S.C. § 1104 does not require a showing of injury to accrue. The *Meagher* plaintiff's cause of action, however, turned on the decrease of his benefits, an actual injury specifically prohibited under ERISA by 29 U.S.C. § 1054(g).

crued. When Westco suffered actual harm is therefore irrelevant except as the circumstances may shed light on when Westco gained actual knowledge of the alleged breach or violation.

To hold otherwise would subvert the congressional policy underlying our decision in *M & R Investment.* Westco argues that its action should not have accrued and the statute of limitations should not have begun to run until it suffered actual harm. If ERISA plaintiffs alleging the types of violations of fiduciary duties Westco has alleged must await suffering actual harm for accrual of their actions, however, then they cannot prosecute breaches of fiduciary duty which, although never resulting in actual harm, Congress intended plaintiffs should prosecute nonetheless. Indeed, the key to the ERISA statute of limitations when applied to these types of violations is not "actual harm," but rather "actual knowledge" of the ERISA breach or violation. 29 U.S.C. § 1113.

## II. Actual Knowledge

■ The second step of analysis under the ERISA statute of limitations directs us to inquire when Westco had *"actual* knowledge" of the alleged breach or violation. 29 U.S.C. § 1113 (emphasis added). This inquiry into plaintiffs' actual knowledge is entirely factual, requiring examination of the record. Identifying the breach may end the analysis in cases where the breach coincides with an ERISA plaintiff's actual knowledge of the breach. While it is possible that in this case Westco had actual knowledge of the breach upon execution of the contract containing the "market value" option, the record does not conclusively establish this fact. We stress that an ERISA plaintiff's cause of action cannot accrue and the statute of limitations cannot begin to run until the plaintiff has actual knowledge of the breach, regardless of when the breach actually occurred. The ERISA statute of limitations, 29 U.S.C. § 1113, requires satisfaction of this second prerequi-

site, the plaintiff's actual knowledge of the breach, before the statute can begin to run.[2]

We note, however, that just because Westco could not accurately quantify its injury until March of 1985 does not mean that Westco lacked actual knowledge of the alleged breach until then. In July of 1984, Connecticut General unequivocally and specifically informed Westco that the "market value" option would result in Connecticut General's retention of a substantial portion of Westco's investment account. Westco's decision to delay liquidation of the account and application of the "market value" option—thus delaying its actual injury—does not change the fact that as of July 1984 Westco had actual knowledge that the "market value" option violated Connecticut General's alleged ERISA duties. We therefore hold that Westco had actual knowledge of the alleged ERISA violation at least as of July 1984, and the three-year statutory period expired in July 1987. Consequently, Westco filed its complaint outside the statutory limitations period.

## CONCLUSION

Upon execution of Connecticut General's investment agreement with Westco containing the "market value" option, the alleged breach of ERISA fiduciary duties occurred. Westco's cause of action accrued at least as of July of 1984 when Connecticut General specifically informed Westco of the effect of the "market value" option on Westco's account and Westco thereby gained actual knowledge of the breach. Because Westco failed to file its complaint against Connecticut General within three years of gaining actual knowledge of the breach, the statute of limitations bars Westco's ERISA action. The judgment of the district court is therefore

AFFIRMED.

---

2. We note that 29 U.S.C. § 1113 provides for tolling of the limitation period till the date of discovery of the ERISA breach or violation in cases of fraud or concealment. This statutory

provision for tolling complements the requirement to ascertain when an ERISA plaintiff gained actual knowledge of a breach or violation.