Charles DIETZ, et al., Plaintiffs,

v.

Patrick CAHILL, et al., Defendants.

No. 94–CV–6633L.

United States District Court,
W.D. New York.

Aug. 7, 1996.

James C. Holahan, Carl R. Krause, Harris, Beach & Wilcox, Rochester, NY, for plaintiffs Charles Dietz, Thomas Roth, Paul Alford.

John A. Ziegler, Furlong DeMarco & Del-Monte, Williamsville, NY, for defendants Patrick Cahill, Robert Eade, Edward Van-putte.

Thomas W. O'Connell, Rochester, NY, for defendant Joseph Bianchi.

Thomas W. O'Connell, Rochester, NY, pro se.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiffs, three members of a six-person Board of Trustees ("the Board") of the Roofers Local Union No. 22 Pension Fund ("the Fund"), commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiffs seek injunctive relief to halt the payment of pension benefits to defendant Thomas O'Connell, and to recoup on behalf of the Fund the amount of benefits that have been paid to O'Connell to date.

The claims against all the defendants have been dismissed pursuant to a stipulation of settlement, with the exception of the claims against O'Connell, the sole remaining defendant. Both plaintiffs and O'Connell have moved for summary judgment.

## FACTUAL BACKGROUND

The Fund is a multi-employer pension plan that provides pension benefits to employees who are represented by the Local Union No. 22 of United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association ("the Union"). The Fund is administered by a Board of Trustees composed of six trustees, three of whom are nominated by the employers whose employees are beneficiaries of the Fund ("the Employer Trustees"), and three of whom are nominated by the Union ("the Union Trustees").

The complaint alleges that in early 1994, the Employer Trustees discovered that O'Connell, who had been the Fund's attorney for a number of years, had been receiving pension benefits from the Fund since 1989. The Employer Trustees objected to O'Connell receiving a pension, on the ground that he was not qualified to receive a pension under the terms of the trust agreement ("the Agreement") which created the Fund.

In response to the Employer Trustees' complaints, the Union Trustees claimed that O'Connell was eligible to receive a pension and that his pension had been properly approved at a January 5, 1989 Board meeting at which the three Union Trustees voted in favor of awarding the pension and one Employer Trustee voted against it. The Union Trustees refused to agree to cease O'Connell's benefits.

On December 30, 1994, the Employer Trustees filed the complaint in this action. The original defendants were the three Union Trustees, O'Connell, and Joseph Bianchi, who was the Fund manager in 1989. The

complaint alleges that defendants have violated their fiduciary duties under ERISA.

## DISCUSSION

### I. O'Connell's Eligibility for Benefits

■ Under the terms of the Agreement, pension benefits may be paid only to "employees," who are defined as "all of the employees of an employer," *i.e.*, employees of construction contractors who participate in the Fund, as well as "all salaried employees" of the Union for whom the Union makes contributions to the fund.

Plaintiffs allege that O'Connell is ineligible to receive pension benefits because he was not an employee of a contractor or a salaried employee of the Union. Although plaintiffs do not concede at this point that the Union made contributions to the Fund on O'Connell's behalf, they contend that even if the Union had done so, that alone would not qualify him to receive benefits; non-employees cannot receive benefits, regardless of whether contributions have been made on their behalf.

O'Connell does not dispute that the Agreement limits eligibility for benefits to employees, as that term is defined in the Agreement. He contends, however, that he falls within the second category of "employees," *i.e.*, salaried employees of the Union. He claims that he became a salaried employee of the Union in 1959, when he was made the Union's Assistant Business Agent. James Cahill,[1] one of the Union Trustees, makes the same assertion in an affidavit.

As stated, however, the Agreement refers not simply to "employees" of the Union, but to "*salaried* employees." O'Connell, though, has presented no evidence that he was ever a salaried Union employee. In fact, all the evidence in the record tends to show that he was not.

O'Connell states that he was compensated for his services to the Union in two ways: first, through contributions made by the Union to the Fund on his behalf; and second, through fees paid to him by the Union for legal services, which O'Connell billed at a reduced rate in consideration of those contributions.

Neither of these types of compensation, however, rendered O'Connell a salaried employee of the Union. First, it is self-evident that the Fund contributions could not constitute a "salary" so as to make O'Connell eligible to receive benefits. If contributions were all that were required, there would be no need for the Agreement to refer to "salaried employees" in the first place; the Agreement would simply have said that *anyone* on whose behalf the Union made contributions would be eligible to receive benefits.

Since the Agreement requires both that the person be a salaried Union employee and that contributions be made on his behalf, then, to contend that contributions themselves constitute a salary is to engage in purely circular reasoning. Contributions are to be made *for* salaried employees; if a person is not salaried, no amount of contributions can supply that deficiency. To say that the contributions render a person salaried, then, would effectively read the term "salaried" completely out of the Agreement.

The Union's payment of reduced legal fees to O'Connell also does not constitute a salary. There is no evidence that O'Connell was paid a fixed amount at regular intervals. On the contrary, his fees, like any ordinary legal fees, were based on the particular work that he performed for the Union. Absent some clear evidence that such an arrangement was intended to be included within the Agreement's definition of "salaried" employment, I find as a matter of law that O'Connell was not a salaried employee for purposes of the Agreement. "The term 'salaried employee,' ... means an employee who is paid a fixed amount of money on a periodic basis (the period being longer than an hour)." *White v. E & F Distrib. Co. Employee's Pension Plan, Springfield Marine Bank,* 922 F.Supp. 132, 138 (C.D.Ill.1996) ("the common understanding [is] that pay comes in three forms, hourly, salaried, and commission"). O'Connell has failed to show the existence of a genuine issue of fact in this regard, and I

---

1. Although the complaint names "Patrick Cahill" as a defendant, subsequent pleadings, including an affidavit from Cahill himself, indicate that his name is James P. Cahill.

therefore conclude that he is not entitled to receive pension benefits under the terms of the Agreement.

## II. *Trustees' Vote in January 1989*

■ In support of his contention that he is entitled to receive pension benefits, O'Connell assert that the Board approved his application to receive benefits at a meeting on January 5, 1989. The minutes of that meeting reflect that all three Union Trustees were present, and two Employer Trustees, Charles Dietz and Thomas Roth. Unlike the minutes for other pension applications voted on at that meeting, however, which state that a motion to approve a pension for someone "was made, seconded and unanimously adopted," the minutes concerning O'Connell's application state that a motion "was made and seconded" to approve the application. The minutes state that upon a show of hands, "[t]here were three votes in favor and one vote opposed. Following further discussion, Mr. Dietz noted that he was not in favor of the motion, and he indicated that under a unit voting method the motion did not pass.[2] The Chairman [Cahill] stated that proper procedures would follow." [3] The matter was taken up again at a meeting on August 15, 1989, the minutes of which state that the Employer Trustees would be given time "to review this matter further and seek appropriate advice."

I find that this record fails to show any genuine issue of fact concerning whether O'Connell's pension was approved in January 1989. The minutes of the January 5 meeting contain no indication that the motion to grant O'Connell benefits was "approved," as the other applications were, and clearly show that the matter was considered unresolved. That conclusion is further demonstrated by the fact that the application was brought up again on August 15, 1989, when it was again left unresolved.

**2.** Under unit voting, if the union trustees vote one way and the employer trustees vote the other, the result is considered a tie and the measure does not pass, even if one side has more trustees voting.

**3.** These quotes are from an amended version of the minutes, which was unanimously adopted by the Board on August 15, 1989. As originally

■ Even if there were an issue of fact about whether the Board approved O'Connell's application in January 1989, however, the fact would remain that O'Connell is not entitled to benefits under the clear language of the Plan. Although O'Connell correctly states that courts will give some deference to trustees' interpretation of the terms of a pension plan, courts will do so only when the trustees' interpretation is rational or reasonable, and does not conflict with the terms of the plan. *See, e.g., Lister v. Stark,* 942 F.2d 1183, 1188 (7th Cir.1991) ("deference, even great deference, is not the equivalent of no review at all"); *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 601 (2d Cir.) (court will accept trustees' interpretation of plan as long as it is rational), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Walling v. Brady,* 917 F.Supp. 313, 321 (D.Del.1996) (holding that trustees' amendment of plan was arbitrary and capricious); *Burditt v. Western Growers Pension Plan,* 636 F.Supp. 1491, 1495–96 (C.D.Cal.1986) (rejecting trustees' interpretation of plan on the ground that trustees had taken certain provisions out of context), *aff'd,* 818 F.2d 698 (9th Cir.1987) (per curiam). The Board's alleged finding at its January 1989 meeting that O'Connell was entitled to benefits conflicts with the express terms of the Agreement because he was clearly not a salaried employee of the Union.

Furthermore, this is hardly a situation in which the court must decide whether to defer to an interpretation of a plan by the entire Board, or even by a majority of the Board. Regardless of whether O'Connell's application was approved by a three-to-one vote, as he claims, the fact remains that a majority of the Trustees has never agreed that O'Connell qualifies for benefits. The Board has always been evenly divided on the issue.

written, the minutes for January 5, 1989 stated that "[i]t was noted that the Union Trustees voted in favor and Mr. Roth voted in the negative. Following further discussion, Mr. Dietz noted that he was not in favor of the motion, and he indicated that under a unit voting method the motion did not pass. It was agreed that the motion would be tabled for further discussion."

## III. Statute of Limitations

O'Connell contends that plaintiffs' action is time-barred because they were aware in August 1989 that he was receiving benefits, yet they did not commence this suit until 1994. O'Connell bases this assertion on a memorandum dated August 3, 1989, from Joseph Bianchi to the Employer Trustees. Bianchi stated that there was a violation of the Agreement in that the Employer Trustees were denying O'Connell's pension. He further stated that he "d[id]n't want to be a part to [sic] a refusal," and that he therefore "ha[d] instructed the custodian of the Fund to begin payment of the pension to Mr. Thomas W. O'Connell beginning with the January, 1989 payment."

Under 29 U.S.C. § 1113, an ERISA action alleging a breach of fiduciary duty must be brought no later than

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation ...

O'Connell contends that the three-year limitations period applies here, running from August 1989, because Bianchi's memorandum gave the Employer Trustees actual knowledge that O'Connell was going to begin receiving benefits at that time.

Plaintiffs concede that, if they did have actual knowledge of the alleged breach in August 1989, the three-year period would apply. However, plaintiffs deny that Bianchi's memorandum gave them actual knowledge that O'Connell would begin receiving benefits in 1989. They note that the minutes of the Board's August 1989 meeting indicate that the Employer Trustees opined that this memorandum indicated Bianchi's disagreement with the Employer Trustees' position concerning O'Connell's benefits. They contend that they did not believe that Bianchi was actually authorizing the payment of benefits to O'Connell, because they believed that he had no authority to do so without the approval of the Board. Plaintiffs also note that Bianchi did not give them a copy of his letter to the Fund custodian, in which Bianchi directed the custodian to begin making benefit payments to O'Connell.

Despite plaintiffs' assertions, it is difficult to see how Bianchi's memorandum could not have put them on notice that O'Connell was receiving, or would soon begin receiving, pension benefits. Bianchi's statement that he "ha[d] instructed the custodian of the Fund to begin payment of the pension to Mr. Thomas W. O'Connell" could not have been clearer, and directly contradicts plaintiffs' contention that the "memorandum d[id] not advise the Employer Trustee's [sic] of Bianchi's intention to unilaterally authorize payment of O'Connell's pension application without the knowledge of the Employer Trustees or the approval of the Pension Fund Trustees." Plaintiffs' Reply Memorandum at 7. In fact, Bianchi went beyond stating his *intention* to authorize payment; he said that he already *had* directed the payment of benefits to O'Connell.

Although plaintiffs correctly note that mere awareness that "something is awry" does not suffice to establish actual knowledge, *see Maher v. Strachan Shipping Co.*, 68 F.3d 951, 955 (5th Cir.1995); *United States v. Mason Tenders Dist. Council of Greater New York*, 909 F.Supp. 882, 891 (S.D.N.Y.1995), plaintiffs here were clearly aware of more than that. They knew that Bianchi had directed that pension benefits be paid to O'Connell, which is precisely one of the specific violations of Bianchi's fiduciary duty alleged in the complaint. *See* Complaint ¶ 37. Thus, plaintiffs "had specific knowledge of the actual breach of duty upon which [they] sue[d]." *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.), *cert. denied*, 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987).

Plaintiffs are also correct, however, in stating that if the August 3, 1989 memorandum gave them actual knowledge of O'Connell's pension, the action is not entirely time-barred, because each check issued to O'Connell would give rise to a new cause of action. *See Meagher v. International Ass'n of Machinists and Aerospace Workers Pension*

*Plan,* 856 F.2d 1418, 1423 (9th Cir.1988), *cert. denied,* 490 U.S. 1039, 109 S.Ct. 1943, 104 L.Ed.2d 414 (1989); *Gruby v. Brady,* 838 F.Supp. 820, 831 (S.D.N.Y.1993). Accordingly, plaintiffs' action is time-barred only to the extent that they seek to recoup benefits paid to O'Connell more than three years prior to the commencement of this action. Since the complaint in this case was filed on December 30, 1994, plaintiffs may recover benefits paid to O'Connell on or after December 31, 1991.[4] Because the total amount of those benefits is not precisely determinable from the present record, the court will leave it to the parties to attempt to agree on an amount. If they cannot do so, further proceedings, such as an inquest to determine damages, may be necessary.

## IV. Exhaustion of Remedies

O'Connell contends that under the terms of the Plan, plaintiffs were required to submit this dispute to arbitration before commencing an action. In support of this contention, O'Connell relies upon § 13(d) of the Agreement, which states that "[i]n the event that trustees are unable to agree upon any action or resolve any dispute within seven (7) days, the trustees shall agree upon an impartial umpire to decide the matter or question in dispute; and in the event of failure of the trustees to agree upon an impartial umpire within five (5) days, any one of the trustees may petition [this court] for the appointment of an impartial umpire, or for such other further or different relief as may be just and proper in accordance with this Agreement ..."

■ I find that O'Connell's argument fails for several reasons. First, as a non-trustee, O'Connell is not entitled to raise this defense. Section 13 deals with disputes *among the trustees,* not disputes between some of the trustees and a person claiming benefits. Although this case at one time involved a dispute among the trustees, it is no longer in that posture. The present dispute is between the Employer Trustees on the one hand and O'Connell on the other.

Furthermore, the Agreement only provides for certain actions to be taken by the trustees in the event of a disagreement among them; there is nothing that states that a non-Trustee may petition the court to appoint an umpire. If the Union Trustees were still parties to this action, then, they could perhaps have raised an exhaustion defense, or could themselves have asked the court to appoint an umpire. They did not do so, however, and there is nothing in the Agreement that empowers anyone other than a trustee to seek arbitration of a dispute.

---

4. Although he does not expressly raise this argument, O'Connell's assertions that the Board approved his application, and that plaintiffs acquiesced in his receipt of benefits from 1989 until 1994, also imply that plaintiffs should be estopped from seeking to terminate his benefits. To the extent that O'Connell's allegations raise such an argument, however, I do not accept it. Although the Second Circuit has held that "under 'extraordinary circumstances' principles of estoppel can apply in ERISA cases," *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1039 (2d Cir.1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986)), this is not such an "extraordinary" case. Regardless of plaintiffs' inaction from 1989 until 1994, O'Connell has not shown any evidence that plaintiffs ever made any representation to him that he was entitled to benefits, and he therefore cannot establish that element of estoppel. *Lee,* 991 F.2d at 1009. *See also Dardaganis v. Grace Capital Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989) (trustees cannot waive right of beneficiaries to strict adherence by fiduciaries to ERISA or to plan document).

Furthermore, "courts in this Circuit have routinely rejected claims based upon oral promises which purport to vary the terms of a written ERISA plan." *Sandler v. Marconi Circuit Tech. Corp.,* 814 F.Supp. 263, 265 (E.D.N.Y.1993). Since the granting of benefits to O'Connell was contrary to the terms of the Plan, any promise that he would be granted benefits would have amounted to an oral modification of the Plan, which is contrary to ERISA's requirement that "all agreements relating to pension benefits must be in writing." *Smith v. Dunham–Bush Inc.,* 959 F.2d 6, 10 (2d Cir.1992) (citing 29 U.S.C. § 1102(a)(1)). *See also Dardaganis,* 889 F.2d at 1241 (allowing trustees to effectively vary the terms of the written document by not objecting to violation of document by fund's investment manager would impair federal policies underlying ERISA); *Ludwig v. NYNEX Serv. Co.,* 838 F.Supp. 769, 798 (S.D.N.Y.1993) (use of estoppel to modify agreement so as to override written terms of ERISA plan is precluded as matter of law).

On the contrary, the Agreement states only that if the trustees do not agree on an umpire, any *trustee* may file an action seeking appointment of an umpire or other relief.

 I am also not convinced that there has been a violation of § 13(d). Although the Agreement states that the trustees "shall" agree upon an umpire, it does not require them to do so, for it also states that upon a "failure" of the trustees to agree on an umpire within five days, any trustee may institute a judicial action, either for the appointment of an umpire, "*or* for such other further or *different* relief as may be just and proper ..." (emphasis added).

Thus, the Agreement does not require the trustees to agree upon an umpire, nor does it state that they must attempt to agree. In addition, the Agreement does not state that disputes among the trustees must be submitted to arbitration prior to bringing a judicial action. The only prerequisite to filing a lawsuit is that the trustees fail to resolve their dispute within seven days, and then fail to agree upon an umpire within a further five days. In addition, when they do file a suit, the trustees are not limited to seeking appointment of an umpire, but may instead seek "other ... different" relief.

That is what happened here. Regardless of whether the trustees sought to agree on an umpire (which the Agreement does not require them to do), the simple fact is that they did not agree on an umpire. Under the language of the Agreement, then, the Employer Trustees were entitled to commence an action, either to seek appointment of an umpire, or to seek other relief, which is precisely what they did.

In support of his exhaustion argument, O'Connell has submitted a copy of a letter from the Employer Trustees addressed to Patrick Cahill, dated January 25, 1995, stating that it was in response to Cahill's "suggestion that we agree to arbitrate whether Mr. O'Connell is entitled to a pension ..." The letter stated that "[t]he Employer Trustees [we]re willing to submit this issue to binding arbitration provided certain terms and conditions are satisfied, for example, the expeditious appointing of an arbitrator and scheduling of a hearing. Of course, the

Court would have to approve arbitration of this issue ..." The letter then suggested that the trustees meet to discuss the matter further.

If anything, this letter tends to rebut O'Connell's assertion that plaintiffs have not exhausted their internal remedies. While it is not clear whether there were any further discussions concerning arbitration, it is apparent that the trustees never did agree to arbitrate the issue of O'Connell's pension. Thus, this letter only reinforces the fact that the trustees did not agree on an umpire, and that plaintiffs were therefore entitled under the Agreement to commence this action.

### V. O'Connell's Liability

 The fact that O'Connell is not eligible to receive benefits under the terms of the Agreement does not in itself make him liable to return the benefits that he has received. ERISA provides that fiduciaries may be held liable for their own breaches of their fiduciary duties, *see* 29 U.S.C. § 1109, as well as for breaches by co-fiduciaries under some circumstances, *see* 29 U.S.C. § 1105. Plaintiffs contend that O'Connell was a fiduciary of the Plan and that he breached his duties in several respects, and that he participated in the Union Trustees' alleged breaches of their fiduciary duty.

A fiduciary is defined by ERISA as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or ... [who] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). O'Connell denies that he was a fiduciary with respect to the Plan.

 I find it unnecessary to decide this question, however, because even if O'Connell was a nonfiduciary, under the facts of this case he could be held liable for restitution for benefits wrongfully received. In *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court held that ERISA does not authorize suits against nonfiduciaries who knowingly

participate in a fiduciary's breach of fiduciary duty. The Court left undecided, however, the question of whether a nonfiduciary could be sued for equitable relief, including restitution. *Id.* at 262–63, 113 S.Ct. at 2072.

In the wake of *Mertens,* several courts have held that nonfiduciaries who are unjustly enriched as a result of a breach of fiduciary duty can be compelled to make restitution. For example, in *Landwehr v. DuPree,* 72 F.3d 726 (9th Cir.1995), for example, the court held that the statement in *Mertens* that "nonfiduciary service providers 'must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by [29 U.S.C. § 1106],' ... reaffirm[ed] the principle that ERISA plaintiffs may obtain equitable relief, including restitution, from service providers who engage in prohibited transactions." *Id.* at 734 (quoting *Mertens,* 508 U.S. at 260–64, 113 S.Ct. at 2071–72. *See also Concha v. London,* 62 F.3d 1493, 1504 (9th Cir.1995) (fiduciaries stated cause of action for equitable relief against attorneys who were retained by plan, based on allegations that attorneys had provided services to plan, and hence were parties in interest, and that attorneys had engaged in prohibited transactions, including receiving excessive compensation), *cert. denied,* —— U.S. ——, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996).

A "party in interest" is defined by ERISA as "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian, *counsel,* or employee of such benefit plan, ... [or] a person providing services to such plan ..." 29 U.S.C. § 1002(14) (emphasis added). It is clear that O'Connell falls within this definition. The minutes of the Board meetings from January 5, 1989 and August 15, 1989, which are attached to O'Connell's summary judgment motion, identify him as "Fund counsel." ERISA specifically prohibits any transaction that would constitute a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan ..." 29 U.S.C. § 1106(a)(1). The granting of pension benefits to O'Connell in contravention of the terms of the Agreement plainly falls within this prohibition. *See New York State Teamsters Council v. Estate of*

*DePerno,* 18 F.3d 179, 182 (2d Cir.1994) (former fund attorney was party in interest under 29 U.S.C. §§ 1002(A) and 1002(B)); *Nieto v. Ecker,* 845 F.2d 868, 873 (9th Cir.1995) (lawyers who had been retained by plan who had failed to prosecute lawsuits and had been paid for services they did not render could be held liable for equitable relief as parties in interest).

The Ninth Circuit's view expressed in *Landwehr* was echoed by the Tenth Circuit in *Reich v. Stangl,* 73 F.3d 1027 (10th Cir. 1996), *petition for cert. filed,* No. 95–1631, 64 U.S.L.W. 3709 (Apr. 9, 1996). In *Stangl,* the court held that the *Mertens* "Court's definition of appropriate equitable relief under [29 U.S.C. § 1132(a)(5) ] is surely broad enough to include the recovery of the fruits of a prohibited transaction from a party in interest." *Id.* at 1032. The court added that "the circuits that have discussed the issue after *Mertens* have not found that the Supreme Court's decision bars equitable actions seeking restitution from parties in interest." *Id.* (citing cases). *See also Reich v. Compton,* 57 F.3d 270, 286 (3d Cir.1995) ("nonfiduciaries may be held liable for their participation in prohibited transactions").

Several district courts from this and other circuits have reached similar conclusions. *See, e.g., Cosgrove v. Circle K Corp.,* 915 F.Supp. 1050, 1065 (D.Ariz.1995) (action for restitution can be maintained pursuant to 29 U.S.C. § 1132(a)(3) against nonfiduciary party in interest to disgorge ill-gotten gains procured through prohibited transaction); *DeLaurentis v. Job Shop Technical Serv., Inc.,* 912 F.Supp. 57, 62 (E.D.N.Y.1996) (claim for restitution under 29 U.S.C. § 1132(a)(3) may be available against nonfiduciary who is enriched as result of violation of ERISA); *Gruby v. Brady,* 838 F.Supp. 820, 834 n. 15 (S.D.N.Y.1993) (*Mertens* did not affect rule set forth in *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 280 n. 12 (2d Cir.1992), that "parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries").

Thus, whether O'Connell exercised sufficient authority or control over the Plan to render him a fiduciary need not be decided

here. As counsel to the Fund, O'Connell was clearly a party in interest, and since he was not eligible for benefits under the Agreement, the issuance of benefits to him was a violation of 29 U.S.C. § 1106(a)(1). Because trustees have a duty under 29 U.S.C. § 1104(a) to act "solely in the interest of the participants and beneficiaries" of the plan, and because 29 U.S.C. § 1132 empowers them to bring an action "to enjoin any act or practice which violates ... the terms of the plan," or "to enforce ... the terms of the plan ...," plaintiffs can properly seek restitution from O'Connell to disgorge all benefits that he wrongfully received. *See Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1241 (2d Cir.1989) (trustees may maintain action to recover, on behalf of the plan, losses caused by actions of other fiduciaries).

## VI. Effect of the Settlement Agreement

O'Connell also claims that plaintiffs have released him from liability by virtue of the settlement agreement between plaintiffs and the other defendants. O'Connell bases this assertion on a statement in paragraph 8 of the agreement that the plaintiffs agreed to release "all past trustees of the Pension Fund ..." O'Connell states that he is covered by this provision because he was a trustee of the Fund from 1981 until 1986.

O'Connell's assertion is meritless. The parties and the court have always understood, and the settlement agreement reflects, that plaintiffs' claims against O'Connell were not included in the settlement. For example, the settlement agreement states at paragraph 3 that "the parties are desirous of settling the claims against the Defendant Trustees and Defendant Bianchi," and that the parties agreed that "in the event that the Plaintiffs obtain a judgment against Defendant Thomas O'Connell, Esq.," the Aetna Casualty and Surety Company ("Aetna") would pay to the Fund the amount determined to have been wrongfully paid to O'Connell. Paragraph 4 then states that upon such payment by Aetna, Aetna would "be able to pursue Mr. O'Connell" to recoup the amount of the payments. In addition, paragraph 17 states that "nothing in this Agreement shall alter or affect in any way

any claim which the Plaintiff Trustees or the Pension Fund have or may have against Thomas O'Connell." In short, O'Connell was not a party to, or covered by, the settlement, and his assertions to the contrary are without merit.

## VII. O'Connell's Counterclaim

In his answer to the complaint, O'Connell asserted a counterclaim against plaintiff Thomas Roth, alleging that he has sought to prevent O'Connell from receiving pension benefits, and that he instigated this lawsuit, out of personal malice toward O'Connell. My finding in favor of plaintiffs on their claims against O'Connell establishes that this counterclaim is without merit, and it is therefore dismissed.

## CONCLUSION

Plaintiffs' motion for summary judgment (Item 9) is granted in part and denied in part. Defendant Thomas O'Connell's cross-motion for summary judgment (Item 34) is granted in part and denied in part.

Plaintiffs' motion for summary judgment is granted to the extent that they claim that defendant Thomas O'Connell improperly received pension benefits from December 31, 1991 to the date of entry of this Decision and Order. Plaintiffs, as representatives of Roofers Local Union No. 22 Pension Fund, are therefore entitled to recover and recoup from defendant Thomas O'Connell such improper payments, plus interest. If the parties cannot agree on the amount of recovery to be reduced to judgment, the matter will be scheduled before the Court for an inquest on damages; and it is further

ORDERED that the trustees and managers of Roofers Local Union No. 22 Pension Fund are hereby enjoined from making any further pension benefit payments to defendant Thomas O'Connell.

IT IS SO ORDERED.